[No. 18696.  Department Two.  May 6, 1925.]

## S. V. NORDWALL et al., Respondents, v. I. COHEN et al., doing business as Cascade Packing Company, Appellants, C. I. DINGFELDER et al., Cross-Appellants, J. W. KLEEB, Respondent.[1]

PRINCIPAL AND AGENT (34)—AUTHORITY OF AGENT—CONTRACTS TO PURCHASE—LIABILITY OF PRINCIPAL. Where a general agent of commission brokers purchased apples for and with the funds of his principals, whether in his own name, or theirs, or in the name of a corporation they had organized to handle their business, the apples belonged to the principals and were subject to attachment as their property.

SAME (67)—NOTICE TO AGENT—SALES—BONA FIDE PURCHASERS. Where the general agent of commission brokers also represented a second broker, and bought apples contracted to the second broker, who had paid for them in part by advances to the growers, the first brokers are charged with notice that the apples belonged to the second broker, either by the knowledge of their general agent, or by the storage receipts taken, which ran to the general agent "for the account of" the growers; and it is immaterial that the actual purchase was made in the name of the first brokers.

PARTNERSHIP (2)—RELATION—SHARING PROFITS ON SALES. An agreement between brokers and their agents for the division of profits from the purchase of apples to be made by the agents with the funds of the brokers, does not create any partnership interest in the apples, but only in the profits to be realized therefrom.

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered May 22, 1923, upon findings in favor of the plaintiffs and interveners, in an action on contract, tried to the court. Affirmed.

*H. J. Snively,* for appellants.

*Moulton & Jeffrey* and *D. V. Morthland,* for cross-appellants.

*Chas. W. Johnson, William B. Clark,* and *Phil G. Warnock,* for respondents Nordwall *et al.*

*Driscoll & Horrigan,* for respondent Kleeb.

[1]Reported in 235 Pac. 824.

Fullerton, J.—In April, 1923, the respondent S. V. Nordwall brought an action in the superior court of Franklin county against the appellants, I. Cohen, Samuel Cohen and M. Cohen, as copartners doing business under the name of Cascade Packing Company, to recover a balance due for apples alleged to have been sold them. A part of the claim was for apples sold on his own account and a part for apples sold by others whose claims had been assigned to him. At about the same time, a similar action was begun against the same parties by the respondent E. W. Barnard. One Harry W. Smith was named in the complaints as a partner of the Cohens, but he was, shortly after the commencement of the action, dismissed therefrom. At the commencement of the actions, a writ of attachment was sued out in each of them and levied upon certain apples then in the possession of the Church Manufacturing Company, doing a storage business at Pasco, in Franklin county. The apples were then being loaded for shipment on the order of the appellants, and were then, partly at least, on cars at the place of business of the warehouse company. The then parties to the action entered into a stipulation under which the apples were shipped and sold and the proceeds returned and deposited with the court to stand in lieu of the property attached.

On appearing in the action, the appellants moved for a change of venue to Yakima county, which change the court granted. After the change, a partnership, doing business as C. I. & M. Dingfelder, intervened in the actions, claiming an interest in the apples. One J. W. Kleeb also intervened, claiming an interest in the apples on behalf of himself. Later on in the proceedings, the interveners stipulated that, in so far as their interests were involved, the fund returned from the sale should also stand in lieu of the apples.

The claims of the respective parties as reflected by the pleadings need not be set forth in detail. Those on behalf of the respondents we have hereinbefore indicated. The interveners Dingfelder claimed that certain of the apples attached were apples which they had purchased from growers, on which they had paid a part of the purchase price and on which they were holden to the growers for the balance. The intervener Kleeb claimed that certain of the apples attached were apples which he had contracted to sell to the other named interveners, that only a part of the purchase price had been paid and that there was a balance of a named sum due him. The defendants Cohen answering the claims of the plaintiffs, denied that they had purchased, either in their own names or in the name of the Cascade Packing Company, any apples from the plaintiffs or their several assignors, and were not indebted to them in any sum. Answering the claim of the interveners Dingfelder, they first denied the allegations of their intervening complaint, and then alleged affirmatively that the apples in question were stored with the Church Manufacturing Company in the name of Harry D. Smith, and a negotiable warehouse receipt issued for the same, and that they were purchasers of the warehouse receipt from Smith for value, without notice or knowledge of any nature whatsoever of adverse interests in or claims to the property. To the complaint of Kleeb, their answer was to the same effect.

The trial court found the facts in accordance with the claims of the plaintiffs and the interveners. From the facts it drew conclusions of law in part as follows:

"7. That the proceeds from the apples now on deposit in the registry of this court be distributed as follows:

"To the plaintiffs to be pro rated the sum of $1,129.50;

"To the intervening plaintiff, J. W. Kleeb, the sum of $610.50;

"To the intervening plaintiffs, Dingfelders, the sum of $3,239.02;

"That the remainder of said money in the registry of the court, to-wit, the sum of $1,111.78, represents the storage charges paid in advance by the defendants Cohen, and that the same are chargeable with the judgments herein awarded against said defendants. That there should be paid from the said sum, (1), the costs of the intervening plaintiff, Kleeb, (2), the costs of the intervening plaintiffs, Dingfelders, less the costs of the intervening plaintiff, Kleeb, (3), the balance thereof to be applied upon the judgment of the plaintiffs."

Judgment was entered according to the findings and conclusions, and from the judgment the defendants Cohen, and the interveners Dingfelder appeal.

Taking up first the appeal of the Cohens, their learned counsel, as we understand him, does not contend that the conclusions of law and the judgment entered do not follow from the facts as found by the court, but contends rather that the evidence does not justify the findings of fact. The evidence discloses that the appellants are brokers, having their principal place of business at Pittsburg, Pennsylvania, and that for a number of years they have engaged in the business of handling apples grown in the state of Washington. Certain quantities of these they have handled on a commission basis, guaranteeing to the growers a certain fixed return, and certain other quantities they have purchased outright from the growers. Their dealings have been extensive, running in values to many thousands of dollars. The record discloses, also, that the growers of apples are obligated to incur a large expense in the care of their orchards in advance of any return from the orchard products. Many of

the growers require advances of money for this purpose, and it is the custom of dealers, such as the appellants, to make these advances. In their dealings within the state of Washington, the appellants have acted through the agency of the Harry D. Smith before named. With perhaps a few isolated exceptions, all of their contracts with growers for advances, all of their contracts for sales on commissions, and all of their outright purchases were made through him. He was given the authority to determine the quality of the product to be purchased, the price to be paid therefor, and was intrusted with the expenditure of all the money sent by the appellants into the state to be used for these several purposes.

In the early part of the year 1921, a member of the appellants' firm came into the state for the purpose of lining up business for the ensuing year. While he was here a number of contracts for financing growers were entered into. He also "organized," as he testifies, the Cascade Packing Company. It was organized, as he further testifies, for the sole purpose of handling the contracts entered into with the growers. The necessity for it is not made clear by the record, as it was only another name for the copartnership composed of the appellants; no other person having any interest in it. Harry D. Smith was denominated sales manager for the concern, and its office was located at the city of Yakima. The appellants seem to have regarded the concern as an entity separate and apart from their Pittsburg business. This appears from the fact that certain notes and mortgages were taken in the name of the concern to evidence and secure loans made to growers, which the appellants caused the concern to assign to themselves under their partnership name as it was known at Pittsburg. Smith executed the assignments on behalf of the local concern. In executing

them, however, he did so as "manager," not as "sales manager." In this transaction there was no change in Smith's general powers as agent. Thereafter as theretofore he continued to make contracts on behalf of the appellants for the purchase of apples, and the appellants continued to intrust him with all of their financial transactions in that behalf, whether contracts made in his own name, in the name of the Cascade Packing Company, or in the name of the Pittsburg partnership.

The appellants Dingfelder are brokers having their principal office and place of business in the city of New York. In the year 1921, they were engaged in the business of handling orchard products grown in the vicinity of Kennewick, in this state. The local agent immediately in charge of their business at that place was a man surnamed Mouda. He was acting under the general direction of Harry D. Smith; Smith having authority from the Dingfelders to supervise his work and handle the financial part of the transactions. Mouda, on behalf of these appellants, also entered into contracts for financing growers, received fruit products to be handled on commissions, and made outright purchases of fruit. As he required money for these purposes, he drew on Smith at Yakima, who, in turn, would draw upon the appellants at New York. The appellants ceased purchasing about the middle of September, 1921. There was much unsold fruit then in the hands of the growers, and Mouda inquired of Smith whether he should continue making purchases, and was directed—so Mouda testifies, but which Smith denies—to continue purchasing in the name of the Cascade Packing Company. Mouda thereupon changed the sign of his principal receiving station from its former name to that of "Cascade Packing Company," and thereafter purchased and contracted to purchase apples in large quantities under that name, twenty-three car-

loads of which of an aggregate value approximating $25,000, were shipped to or placed to the order of the appellants Cohen. The claims of the respondents, in so far as they are based upon claims for apples sold to the appellants Cohen, are founded on contracts made by Mouda while purchasing apples in the name of the Cascade Packing Company.

The claim of the appellants Dingfelder arise out of these circumstances: While these appellants were in the business of purchasing, they entered into contracts with growers Shoemaker, Boyd, Kleeb and Warnock, for apples grown by them severally, making advances on the contracts. These apples were delivered at way stations where there were not adequate facilities for protecting them against freezing weather. They remained for sometime at the stations to which they were delivered, and as the cold weather approached, Mouda called Smith's attention to their exposed condition, advising him, at the same time, that there were facilities for storing apples at Pasco, with the Church Manufacturing Company. Smith, on receiving this information, authorized their removal to Pasco and their storage with the company named, telling Mouda to take the storage receipts in his (Smith's) name. Mouda did not follow the instructions literally. He shipped the apples to the designated place and stored them in Smith's name on the growers' account; the one representing the apples contracted to be purchased from Kleeb, which is indicative of the others, reading in this respect, "Received from Harry D. Smith, for the account of J. W. Kleeb" a certain number of boxes of apples, describing their grade and kind. There was, also, a certain lot purchased from a Dr. Mary D. Hudson, which was also stored at the same place and receipted for in the same manner. The title to this lot, however, is not here in question; it being conceded

that they were, at the time of their storage, the property of the appellants Cohen. It was the foregoing apples—that is to say, the apples stored in the name of Harry D. Smith for the accounts of Shoemaker, Boyd, Kleeb, Warnock and Hudson—that were attached by the plaintiffs on the institution of their actions. And it was upon the assignment of these receipts that the appellants Cohen base their claim that they are purchasers of the apples without notice of adverse interests.

From the foregoing recitals, it would seem to follow that the judgment of the court, as between the appellants Cohen and the plaintiffs in the action, is without error. Harry D. Smith was the general agent of the appellants for the purchase of apples on their behalf, and the apples of the plaintiffs were purchased by him as such general agent. It matters not, therefore, whether he contracted to purchase them in his own name, in the name of the Cascade Packing Company, or in the name of the appellants as they were known at their Pittsburg place of business. In either event they were purchased on behalf of the appellants. The obligations incurred by the purchases were the obligations of the appellants. They were thus liable to answer to an action brought by the plaintiffs upon the obligations, and such interest as they had in the apples was, in the situation here presented, liable to sequestration for any judgment the plaintiffs might obtain upon the obligations. The trial court, in its judgment, but recognized these principles. Its judgment was, therefore, within the issues and the facts developed at the trial upon the issues.

As between the appellants Cohen and the interveners Dingfelder, we likewise conclude the judgment to be without error. The apples purchased from Shoemaker, Boyd, Kleeb and Warnock were purchased on behalf

of the Dingfelders, and were in part paid for by moneys advanced by them. Smith, as the general agent of the Cohens, had knowledge of the fact. This, in our opinion, owing to the somewhat peculiar relation of the parties, was notice to them. But if this be not the rule, the receipts themselves contained notice that Smith's title was not absolute. On their face they showed an adverse interest. The Cohens were thus put upon inquiry, and they must be held to have discovered any fact concerning them that inquiry would have discovered. As the apples were in fact the property of the Dingfelders, the judgment rightfully awarded the value of the apples to them.

It is contended by the appellants that Smith, Mouda and the Dingfelders were partners, and it is argued from this that Smith, as a member of the partnership, could make such disposition of the apples as he pleased. But we find no support in the record for the contention. There were some negotiations at one time, undoubtedly, to the effect that these parties would divide the profits accruing on the purchase and sale of fruit made on behalf of Dingfelder equally between them, but this understanding if carried out would not make them partners, nor vest in the others any title to the fruit purchased on behalf of the Dingfelders with the latter's funds. *State v. Mendenhall*, 24 Wash. 12, 63 Pac. 1109; *Belch v. Big Store Co.*, 46 Wash. 1, 89 Pac. 174. In other words, the partnership, if there was any, was in the profits to be derived from a sale of the fruit purchased, not in the fruit itself.

The appeal of the Dingfelders needs no separate discussion. From the facts recited, it is plain that the court awarded them all of the relief to which they were justly entitled, and any additional relief must be based on a different view of the facts.

Our conclusion is that the judgment of the trial court

should stand affirmed, and it will be so ordered. The respondents (plaintiffs) will be awarded their costs in this court against the appellants Cohen. No costs for or against the appellants Dingfelder will be taxed.

HOLCOMB, MITCHELL, BRIDGES, and MACKINTOSH, JJ., concur.