[No. 3824. Decided February 2, 1901.]

THE STATE OF WASHINGTON, *Respondent*, v. EDWARD B. MENDENHALL, *Appellant*.

FALSE PRETENSES — DEFENSES — PARTNERSHIP.

An executory contract for the division of profits on the sale of goods does not constitute a partnership, so as to exonerate from the crime of larceny one of the parties thereto who fraudulently obtains such goods from the other party by false pretenses.

SAME — AGENCY.

A person who by false and fraudulent pretenses obtains the goods of another cannot escape liability for his crime on the ground that he acted merely as an agent in procuring possession of the goods for his principal.

Appeal from Superior Court, Yakima County.—Hon. JOHN B. DAVIDSON, Judge. Affirmed.

*Henry J. Snively,* for appellant.

*John J. Rudkin,* Prosecuting Attorney, and *Frank H. Rudkin,* for the State.

The opinion of the court was delivered by

DUNBAR, J.—The defendant, a representative of the Copper State Fruit Company, a corporation doing business in Butte, Montana, came to North Yakima for the purpose of buying fruit. The Copper State Fruit Com-

pany was a commission house engaged in the buying and selling of fruit. In North Yakima the defendant met the prosecuting witness, Perry, who was at the time engaged in purchasing and selling fruit in Yakima county. It was agreed between them that Perry should purchase apples to be shipped to Butte, Montana, and there placed in cold storage and sold, and the net profits, after deducting storage charges, etc., divided between Perry and the Copper State Fruit Company. A draft was to accompany the shipping receipts, and the apples were to be substantially paid for on arrival at Butte, and before delivery. Before this agreement was made, the prosecuting witness had contracted for and purchased a portion of the apples which were afterwards shipped. Before the shipments were made the defendant represented to Perry that he had deposited to his credit in the Yakima National Bank of North Yakima the sum of $5,000, which Perry could draw against for the purchase price of the apples about to be shipped. It was then stated by Perry to the defendant, in an interrogatory manner, that it would not be necessary for him to draw against the apples when shipped according to the original agreement, and the defendant replied that it would not. According to the testimony of Perry, relying upon the representations that the money had been deposited as stated, and believing the representations to be true, he delivered to defendant the apples in question, which were shipped over the Northern Pacific by the defendant, consigned by the Copper State Fruit Company to the Copper State Fruit Company at Butte. On his return to North Yakima, these representations having been made in the country about twenty miles from town, and after the shipment of the apples, Perry discovered that no money had been placed to his credit in the bank, and immedi-

ately stopped the apples in transit, and subsequently had them restored to him. Thereupon he filed an information, the charging part being as follows:

"He, the said Edward B. Mendenhall, on the 24th day of October, 1899, A. D., in the county of Yakima, state of Washington, then and there being, did then and there unlawfully, feloniously, and designedly obtain from one J. M. Perry four car-loads of apples, of the value of two thousand six hundred and fifty dollars, lawful money of the United States, of the goods and chattels of him, the said J. M. Perry, by then and there unlawfully, feloniously, designedly, and falsely representing and pretending to him, the said J. M. Perry, that he, the said Edward B. Mendenhall, had theretofore deposited and placed in the Yakima National Bank of North Yakima, Washington, the sum and amount of five thousand dollars, lawful money of the United States, to the credit and in the name of him, the said J. M. Perry, in payment for the purchase price of said four car-loads of apples, which said representation and pretense so made the said Edward B. Mendenhall then and there well knew to be false and untrue, with intent then and there to defraud him, the said J. M. Perry, contrary to the statutes in such cases made and provided."

The cause came on for trial, and, after the introduction of testimony and instructions of the court, the jury returned a verdict of guilty as charged in the information. Judgment was entered and appeal taken.

Upon the conclusion of the testimony, motion was made by the defendant's attorney to dismiss the case, and the refusal of the court to grant this motion is alleged as the first error. The contention under this assignment of error is that Perry, the prosecuting witness, and the Copper State Fruit Company were partners under the arrangement entered into, and that, therefore, Mendenhall's possession or that of the Copper State Fruit Company

was Perry's possession, and thus no goods were ever obtained. Many cases are cited to sustain the doctrine that one partner cannot commit larceny of the goods of the partnership; but, as we read the testimony in this case, these authorities are not pertinent, for there was no existing partnership proven. It is true that a certain amount of profits was to be divided between the prosecuting witness and the Copper State Fruit Company after certain conditions were complied with by the company, but the company had not yet bought into the partnership. The contract with the prosecuting witness was purely executory. He bought the fruit and paid for it with his own money and in his own name. He was certainly entitled to possession of it and was the owner of it, and his possession or ownership could not have been interfered with or in any way disturbed by the Copper State Fruit Company at the time the delivery of the fruit was made to the defendant, because the payments agreed upon had not yet been made, and it was upon the theory that the money for the payment of the fruit was deposited in the bank to his credit, and because of his belief in the representation to this effect made by the defendant, that he parted with the possession of the property and delivered it to defendant. The defendant therefore obtained the fruit by fraudulent and false representations, and thereby brought himself under the ban of the law.

The second assignment of error is that the court erred in not granting plaintiff's motion to dismiss because there was a fatal variance between the information and proof. It is insisted that the information charges Edward B. Mendenhall with obtaining the goods mentioned under false pretenses, while the proof shows that Edward B. Mendenhall never obtained the goods, but that, if any person obtained the goods, that person was the Copper

State Fruit Company, of which company Mendenhall was the agent. It is evident from the testimony that if anybody made false and fraudulent pretenses, and obtained the fruit by reason of such misrepresentations, it was the defendant Mendenhall. The plea of agency is not available to one who knowingly commits a crime. We think there is no merit in this assignment.

The question of fact having been submitted to the jury under proper instructions, the judgment is affirmed.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.

MOUNT, J., not sitting.