.9033

STATE v. GRUMBLES.

(84 S. E. 783.)

CRIMINAL LAW. LARCENY AFTER BREACH OF TRUST WITH FRAUDULENT INTENT. PARTNERSHIP. CHARGE. ISSUES. DEFINITION.

1. CRIMINAL LAW—LARCENY AFTER BREACH OF TRUST.—A copartner cannot be convicted of larceny after breach of trust committed with reference to the copartnership property.

2. PARTNERSHIP—ISSUES.—Whether a partnership exists between two or more persons is dependent upon the agreement between them, and whether the parol testimony in the case at bar established it, was properly submitted to the jury, with instructions as to what facts, if established, would constitute such relationship.

3. EMBEZZLEMENT—BREACH OF TRUST—PARTNERSHIP—EVIDENCE.—In a prosecution for breach of trust with fraudulent intent, evidence *held* to take to the jury the question, whether a partnership existed between defendant and prosecutor which would be a defense to the prosecution.

4. CRIMINAL LAW—PAROL EVIDENCE—"PARTNERSHIP."—"Copartnership" is a factitious relationship between two or more persons, and its existence depends on the agreement between the parties and the agreement may be establishd by parol.

5. PARTNERSHIP—DEFINITION.—The statement in *Price* v. *Middleton & Ravenel*, 75 S. C. 108, 55 S. E. 156, as to what constitutes a partnership followed and approved.

Before BOWMAN, J., Greenville, September, 1914. Affirmed.

The defendant, J. B. Grumbles, being convicted of larcecy after breach of trust with fraudulent intent, appeals. The facts are stated in the opinion. The testimony with reference to the alleged partnership was as follows:

R. H. Chastain, a witness for the State, being duly sworn, testified as follows:

Q. Mr. Chastain, where do you live? A. Brandon Mills. Q. What is your business? A. Well, I work at the carpenter's trade some and trade cows some. Q. You have got J. B. Grumbles indicted here for fraudulently appropriating to his own use certain moneys of yours

amounting to eighty dollars and twenty cents ($80.20). It is charged in the indictment that you intrusted him with the collection of these moneys. Now, go ahead and state the transaction. A. Mr. Grumbles used those cows, a selling them for a commission, what he got over the principal. Q. Well, now, did the cows belong to you? A. Yes, sir. Q. You turned them over to him to sell for you? A. Yes, sir. Q. Did he or not settle? A. No, sir; he did not. Q. Well, now, did you authorize him to use that money? A. No, sir. Q. Did you loan it to him? A. No, sir. Did you tell him he could appropriate it to his own use? A. No, sir. Each cow he sold he was to settle and take hold of the profits that he made. Q. You put a price on the cows and he was to settle with you right away? A. Yes, sir; what they cost. Q. And then give you half the profit? A. Yes, sir. Q. You didn't authorize him to use the money at all? A. No, sir. Q. When you first went into business how much did Grumbles put into that business? A. Not a cent. Q. Didn't he put in thirty-two dollars? A. No, sir. Q. Didn't he agree to sell those cows and you were to take half of the profit and he the other half? A. Yes, sir; every one that he traded. Q. Every one that he traded he was to have half the profit and you half? A. Yes, sir. Q. When you first went into business what was the nature of your relations with him? A. Well, sir, I was to furnish the money to buy the cattle and Mr. Grumbles was to sell them. Q. He was to do the work? A. Yes, sir. Q. And he was to get half of what they cost? In other words, you were partners? A. No, sir. Q. He put in the work and you put in the money? A. Yes, sir. Q. He put in his work against your money? A. No, sir; not against my money at all. It was the commission what he made there. Q. He put in the work and you put in the money? A. No, sir. Q. Did you ever do any work? A. Yes, sir; I certainly did. Q. What work did you do? A. I went and bought cows. Q. I just want

240 . STATE *v.* GRUMBLES.

to ask you again positively, when he went into business with you if you put in the money? A. Yes, sir. Q. He put in the work, didn't he? A. Yes, sir; he put in the work. Q. And he was to get half the profits and you half? A. He was to get half of the profits of the cows, he bought, providing that he cuts out the profits. Q. Listen to me. It is as plain as it can be. When you went into business together you put in the money and he did the work, and you were each to get half of the profits? A. Yes, sir; out of every one that come in. If he got any profit out of what he sold he was to get half, but if he got no profit out of it there was to be nothing. Q. I want you to understand the agreement. You put in the money and he put in the work, and he was to get half of the profits? A. If he got any profit he was to get half, if he got none he wasn't to have none. Q. This was the agreement; that you put in the money and that he do the work, and you were each to get half of the profits? Ain't that the agreement? A. I bought the cows and paid for them and he was to sell them, and if he made a profit he was to have half of what he made. Q. And you were to get half? A. Yes, sir; I was to get half and him half. Q. And he was to have the possession of them and do all the trading? A. Not all of it. Q. You didn't fix a price on that stuff, did you? A. It was fixed when I bought it. Q. That he was to get just what that was? A. If he got anything out of it. Q. That he was to get just what you paid for it? A. If he got anything out of it. Q. If he sold them for more than that that was the profit? A. Yes, sir. Q. And he was to sell these cows for you, and if he made a profit he got half and you got half? A. Yes, sir. Q. Who was doing the feeding of these cows all the time? Didn't Grumbles do that? A. I give him that money to buy feed when I went back down home. Mr. Mauldin, do you want the truth in this case? Court: You answer his questions. Q. Who paid for the feed for these cows? A. I paid for

part of it.   Q. Who paid for the·other part?   A. I don't
know, sir.   Q. If they got any Grumbles was responsible
for feeding them, wasn't he?   A. What I didn't pay for,
I reckon.

*Messrs. Oscar K. Mauldin* and *T. C. Turner, Jr.,* for
appellant, submit: *The undisputed testimony could admit
of no construction other than that there was a partnership:*
1 Nott & McC. 13.

*Mr. Solicitor Bonham,* for respondent.

March 13, 1915.

The opinion was delivered by MR. JUSTICE GAGE.

Indictment and conviction and judgment for breach of
trust with fraudulent intent.   Appeal by defendant.

There are two exceptions, but only one issue.

There was no testimony for the defense, and only one
witness for the State upon the issue in the case, and that
the prosecutor, Chastain.

The defendant's contention is, that the testimony of
Chastain, direct and cross, made a case of partnership
betwixt Chastain and Grumbles to buy and trade and sell
cows.

The exact and practical contention is, that the testimony
was susceptible of that inference and only that inference;
and that the Court ought to have so held and to have
directed a verdict of not guilty.

Of course, if the two men were copartners there
could be no conviction under the indictment.

The Court submitted to the jury as one of the
issues in the case whether or not the testimony of Chastain
made out a case of partnership; and the Court
instructed the jury what constituted a partnership;
but the Court declined to tell the jury that the testi-
mony certainly made a case of partnership.

We think the judgment of the Court thereabout is correct.

Copartnership is a factitious relationship betwixt two or more parties; and its existence depends upon the agreement between the parties; and the agreement may be established by parol.

There is a lucid statement of the law of partnership in *Price* v. *Middleton,* at 75 S. C. 108, 55 S. E. 156, *et seq.* There is no need to repeat it here.

Measured by the rules there stated it is not certain that the relationship which existed betwixt Chastain and Grumbles constituted them partners.

The judgment below is affirmed.