STATE OF IOWA, Appellee, v. W. E. PIERSON, Appellant.

**JURY: Jury Lists—Correction.** A jury list which contains the names
1 of the judges of election of the precinct from which the list is sent is not a list, as provided by statute, and is properly corrected by the board of supervisors by striking the names of said judges and by inserting the names of qualified persons in lieu thereof.

**JURY: Jury Lists—Correction Without Formal Record.** The act of the
2 board of supervisors in correcting a jury list by substituting the names of competent jurors in lieu of those who are incompetent is not rendered illegal because the substituted names were all suggested by one member of the board, nor because no record of the correction was preserved in the minutes of the proceedings, it appearing that the final correction was approved by the board.

**CRIMINAL LAW: Trial—Former Jeopardy as Rebuttal.** When the
3 State, in a prosecution for receiving deposits while the bank was insolvent, seeks to establish the insolvency by proof which tends to show that the accused had both embezzled funds of the bank's and had made false reports concerning the assets of the bank, the accused may show, in rebuttal, that he has been indicted for both of said alleged offenses, and *acquitted.*

**BANKS AND BANKING: Criminal Offenses—Receipt of Deposits**
4 **When Insolvent—Unallowable Defense.** On an indictment for receiving deposits from a partnership while the bank was insolvent, it is no defense that one of the members of the partnership was a director of the bank, and that said deposit was made with his approval and with full knowledge on his part of the financial condition of the bank.

Headnote 1: 28 C. J. p. 778. Headnote 2: 28 C. J. p. 778. Headnote 3: 16 C. J. p. 255. Headnote 4: 7 C. J. p. 580.

Headnote 1: 16 R. C. L. 240. Headnote 4: 31 L. R. A. 124; 3 R. C. L. 490.

*Appeal from Union District Court.*—H. H. CARTER and HOMER A. FULLER, Judges.

NOVEMBER 15, 1927.

Indictment for receiving deposits while bank was insolvent. Defendant was convicted, and appeals.—*Reversed.*

*Higbee & McEniry,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Carl J. Stephens,* Assistant Attorney-general, for appellee.

MORLING, J.—I. The judges of election of one precinct placed on the grand jury list their three names, contrary to Section 10867, Code of 1924. When the list was presented to the board of supervisors at the meeting held to canvass the votes, the names of the three judges were stricken from it, and the names of three other persons substituted, one of whom served on the grand jury returning the indictment now before us. The new names were selected by the supervisor for the district including the delinquent precinct. The substitution and the reason for it were called to the attention of the board. No record of the change was made in the board minutes. The members of the board of supervisors signed the list. The approval of the board, signed by the chairman, was indorsed upon the list. The list was stamped "filed," with the date and signature of the auditor. There is no contention that the list was not recorded in the auditor's office. The clerical work of striking the three names and writing in the names of the three substituted was done by the deputy county auditor. Section 10868, Code of 1924, provides:

1. JURY: jury lists: correction.

"If the judges of election in any precinct fail to return any list as provided in the preceding section, the board of supervisors shall, at the meeting held to canvass the votes cast at such election, make and certify such list or lists for the delinquent precincts, and the auditor shall file such certified lists in his office and cause copies thereof to be recorded in the proper election books."

Defendant argues that the change was made by the deputy county auditor, and not by the board. The evidence is to the contrary. It is immaterial who did the clerical work. That

2. JURY: jury lists: the selection (or more properly, the nomina-
correction with-
out formal tion) was made by one supervisor, is immaterial.
record.         The board adopted it, and the amendment. to
the list was the act of the board. That the board acted, is clear-
ly shown, and its action ought not to be annulled because it
caused no entry thereof to be made in the minutes of its pro-
ceedings.  At the oral argument, stress was laid on the use of
the words "any list" in Section 10868:

"If the judges of election in any precinct fail to return
*any* list as provided in the preceding section, the board shall
* * * make and certify such list or lists for the delinquent pre-
cincts."

By the preceding section, 10867:

"The judges of election of the several precincts shall make
selection of the requisite number of persons to serve as grand
and petit jurors, and of talesmen, if any, and return separate
lists of the names so selected * * * but shall not place on said
lists the name of any person described in Section 10860, or
judges or clerks of the election."

The failure spoken of is not merely a failure to return a
physical document, but "any list as provided in the preceding
section." The preceding section prohibits the placing on the
list of the names of those who are by the statute disqualified. A
list in violation of the express prohibition of the section is not
a list "as provided" therein. The judges of election are re-
quired to make two, and in case of some precincts, three, jury
lists. The grand-jury list is not the only one to be returned.
The word "any" has different interpretations. In the Century
Dictionary, one definition is: "In the singular, one, a or an,
some * * *." See, also, 1 Words & Phrases 412. It may mean
one of a number. Idem.

Qualified and disinterested jurors, grand and petit, must be
available for the trial courts. The policy of the law is that
jurors should be drawn from all parts of the county (or judicial
division). To that end, an apportionment among the precincts
is required. The substance of the requirement is that lists of
qualified persons drawn from all precincts on the basis of the
apportionment, made up by disinterested persons, shall be pre-
pared and filed, ready for use in drawing jurors. Primarily,
the judges of election are required to make the lists apportioned

to their precinct, and from qualified persons, and on the appor-
tioned basis. Judges of election know little of the statutes or of
legal formalities, and are quite likely to be more or less inatten-
tive to their printed instructions. It might very easily happen
that their failure to attend to the qualifications of jurors would
result in leaving one or more precincts largely, if not wholly,
unrepresented on the grand and petit jury lists for two years,
and the distribution of jurors thereby disturbed. The existence
of a correcting body is not only desirable, but quite necessary.
None is provided for, unless it is the board of supervisors. We
think it would be too narrow a construction of Section 10868 to
say that it gives no authority to the board to make a list if a
purported one, or merely physical document, is returned, though
it obviously disregards the requirements of Section 10867.
When the judges of election placed their own names upon the
list, they thereby violated the prohibition of that section. The
list was not such a one "as provided" therein.

"The object of the statute is to prevent frauds, and to in-
sure the proper and legal selection of sound and discreet per-
sons to serve upon the jury." *State v. Ansaleme,* 15 Iowa 44.

See, also, *State v. Pierce,* 90 Iowa 506; *State v. Heft,* 148
Iowa 617; *State v. Carter,* 144 Iowa 371. Informalities not
prejudicing the accused will be disregarded. Idem. We are
required to "examine the record, without regard to technical
errors or defects which do not affect the substantial rights of
the parties, and render such judgment on the record as the law
demands." Section 14010, Code of 1924. This is applicable to
objections to grand jurors. *State v. Pierce,* 90 Iowa 506. In
*State v. Walker,* 192 Iowa 823, and *State v. Spangle,* 193 Iowa
1001, the county auditor placed in the jury list names selected
by himself. It was held that he had no authority to do so; that
this was the function of the board of supervisors. The cases are
not in point here. The indictment was not invalid because of
the change in the jury list.

II. In the process of proving insolvency of the bank, and
defendant's knowledge of it, it was shown that there was a
"shortage" of $6,000 in the account of the town of Afton with

3. CRIMINAL LAW: the bank. The defendant was the treasurer of
trial: former the town. One of the sheets of the bank ledger
jeopardy as
rebuttal. account with the town, showing credits, was

missing, with the result that a liability of the bank's of $6,000 to the town was not shown on the bank books. There was also evidence that United States bonds to the amount of $15,000 were carried on the bank's books as an asset, but no bonds were found when the bank closed. Reports made by defendant did not show the $6,000 liability. They did show the bonds as an asset. The tendency of the evidence was to raise an inference that defendant had embezzled the funds of the town and the bonds, and had made false reports. Defendant offered to prove that he had been indicted for the embezzlement of the $6,000, and had also been indicted for making false reports in listing in the assets the $15,000 of bonds, and in omitting from the liabilities the $6,000 owed the town, and that he was tried on those indictments and acquitted. The evidence was excluded. We think it should have been admitted. Evidence of the shortage and of carrying and failure to find the bonds was admissible on the question of insolvency and defendant's knowledge of it; but that such evidence, without the proof of the former acquittal, might, in the minds of the jury, raise an inference of guilt of embezzlement and of making false reports, and that such inference would be damaging, if not fatal, to the defense, is too clear to need demonstration. That the State, by the reception of its evidence and the exclusion of the evidence of acquittal of the crimes of embezzlement and making false reports, acquired an unfair advantage, and the defendant was thereby unfairly placed at a great disadvantage, is obvious. It is elementary that the accused may not be again tried for an offense of which he has been once acquitted. Indirectly, the defendant was put on trial a second time on each of the charges on which he had been formerly acquitted. He should no more be put in jeopardy a second time by indirection under an indictment for another offense than on a direct indictment for the same offense. The evidence of the former acquittals should have been received. *Mitchell v. State*, 140 Ala. 118 (37 So. 76, 103 Am. St. 17).

III. The indictment was for receiving a deposit from "Charles Coen, a member of the firm of Coen & Coen, a co-partnership, which copartnership was the owner of the money,

bills, checks, and notes so deposited." M. D.

4. BANKS AND
BANKING: crim-
inal offenses:
receipt of de-
posits when in-
solvent: unal-
lowable defense.

Coen, another member of the firm, was a direc-
tor of the bank, and present at meetings of the
board shortly before the bank closed, at which
the affairs of the bank were gone over. The
defendant requested the court to charge the jury:

"If the jury believe from the evidence that the deposit
charged in the indictment, as made by Charles Coen, was a de-
posit of funds of the firm of Coen & Coen, a partnership, of
which M. D. Coen, a director of the bank, was a member, and
that said deposit was made by and with the advice, knowledge,
and consent of M. D. Coen, a member of said firm, and if the
jury further believe from the evidence that said M. D. Coen
was at that time a director of said State Savings Bank of Afton,
Iowa, and then and there had full and complete knowledge of
the conditions of said bank, as to its solvency or insolvency, that
then the defendant, in receiving the said deposit in question,
could not be guilty of the crime charged, because the depositor
was in no way deceived or misled in making such deposit."

The court refused this instruction. The defendant argues
that the essential element of the crime charged is fraud, and
that, if the depositor is not deceived, it is no crime to receive
his deposit. We need not pause to discuss this proposition.
That the ruling was correct, we think admits of no doubt. The
partnership was an entity, distinct from its members. The
funds deposited belonged to the partnership, and not to the
director of the bank. The ultimate interest in the partnership
funds belonged, in greater or less part, to others than the direc-
tor member. To the extent of their interest, the deposit was
not that of funds belonging to him. He might have been fully
informed of conditions, and have fully consented to the bank's
receiving the deposit; and yet, as between his interest in the
firm and his interest in the bank, it might have been, in his
opinion, to his interest that the bank should receive the de-
posit. The fact that he was not deceived or misled in making
the deposit ought in no wise to exculpate the defendant from
receiving on deposit funds of the partnership or the interest
of the director's copartner therein.

IV. Among the grounds for new trial· were alleged mis-
conduct of jurors and coercion of a verdict by the court. These

questions are not such as are likely to arise on a new trial, and therefore need not be discussed. We may say, however, that no error in either of these respects appears.—*Reversed.*

EVANS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.

DE GRAFF, J., concurs in result.

ALBERT, J., dissents as to Division I.