STATE OF IOWA, Appellee, v. P. M. CHAMBERLAIN, Appellant.

No. 41445.

NOVEMBER 15, 1932.

Vernon W. Lynch, for appellant.

John W. Fletcher, Attorney-general, Neill Garrett, Assistant Attorney-general, for appellee.

ALBERT, J.—The fact situation in this case from which this alleged crime arose might be found by the jury as follows: Chris Larsen was living at Odebolt, Iowa, during April, 1930. He was engaged in the hotel business and was looking for a new location. In answer to an advertisement inserted by the defendant in a Des Moines paper, Larsen met the defendant in Des Moines and negotiations were entered into between them for the renting of a hotel property in Des Moines known as the "Manhattan Hotel." These negotiations resulted in an agreement between Larsen and the defendant under date April 26, 1930. This agreement was in writing,—too lengthy to be set out in full,—but the substance of it is that the defendant made an operating agreement for the hotel property for a term of five years at the rental of $933 per month. This agreement refers to the fact that the defendant "has entered into a lease agreement with the Marks Investment Company, * * *

which agreement, under date April 15, 1930, is hereby specifically referred to and made the basis hereof." One of the terms of this agreement between the defendant and Larsen was that Larsen should "pay as advanced rent on the signing of this operation lease agreement, the sum of $3,500, which shall constitute the rental payment for the last three and three-fourths rental under the contract."

Many other provisions are contained in this contract which are not material to our consideration of this case.

The writing between the defendant and the Marks Investment Company was also introduced in evidence and amounts at most to an offer to make a lease under the terms therein set out, and the lease clause thereof provides: "It is understood that the above offer is open, subject to acceptance up to a period of ten days from date." This option bore date April 15, 1930.

It also appears that at the time said option was made, a lease was made, in compliance with the terms of the option between the Marks Investment Company and the defendant, Chamberlain, but the same was never delivered.

At the time the defendant and Larsen signed the agreement above referred to, Larsen paid to the defendant $3,500 by delivering to him two checks, payable to his order, one for $500 and the other for $3,000, which checks were later cashed by the bank on which they were drawn, and the defendant received the proceeds thereof.

Appellee's evidence shows that defendant stated to Larsen that he had bargained and leased the hotel; that he "had some business intentions he was promoting * * * which made it necessary to dispose of his hotel proposition." He also stated to Larsen that he had bought all the furniture, about $15,000 worth, from Davidsons, and the hotel was then under construction or remodeling and was going to be ready in a very short time. Defendant also told Larsen that he (defendant) had paid a year's rent in advance and paid $3,500 on the furniture contract. All of these statements are shown to have been false. The defendant also took Larsen to Davidson Bros. Furniture Store and showed him the furniture he said he had purchased for the hotel. It developed, however, that the furniture pointed out had been purchased by the defendant for his residence property and not for the hotel. This hotel property was not furnished and put in shape in accordance with the agreement, and later the defendant told Larsen that he was not able to carry out

his furniture and hotel lease, and he would have to make some arrangements to refund Larsen the $3,500, which he never did.

Roughly stated, this represents the fact situation in the case. The indictment contains two counts: 1st. A charge of larceny. 2d. A charge of embezzlement. The embezzlement charge was dismissed on motion of the prosecuting attorney.

One of the major propositions involved in this appeal is whether or not, under a record of this kind, the defendant is guilty of larceny. While the crime of larceny and obtaining property by false pretenses lie very close together, they are distinguishable, and more so under the statutes of the state of Iowa, which provide a separate punishment for each, larceny being provided for in Chapter 577 and false pretense in Chapter 581, Code 1931.

In the case of State v. Loser, 132 Iowa 419, 1. c. 427, we marked out the distinction between these two crimes as follows:

"If the false pretenses induce the owner to part with his property, intending to transfer both title and possession, the crime is cheating by false pretenses. If, on the other hand, one by fraud, trick, or false pretense induces the owner to part merely with the possession of his property, there being no intent to pass the title, and the party who receives it took it with intent fraudulently to convert it to his own use, the crime is larceny."

That this is quite the universal rule, see 25 C. J. 657, section 98; 36 C. J. 778, section 141.

The State relies largely upon the case of State v. Ritchie, 196 Iowa 352. That case comes within the second provision of the definition above set out, in that the possession of the property was obtained, but not the title.

As applied to the fact situation before us, it is evident beyond peradventure that when this $3,500 was paid by Larsen to the defendant, it was his intention and he did in fact part not only with possession of the property, but also the title thereto, and it was his intention so to do. This being true, if defendant was guilty of any crime, it was that of obtaining this money by false pretense, and not larceny. It is apparent, therefore, that the defendant was wrongfully convicted of the charge of larceny and, therefore, his motion for a directed verdict should have been sustained.—Reversed.

STEVENS, C. J., and FAVILLE, DE GRAFF, and WAGNER, JJ., concur.