STATE OF IOWA, appellant, v. THOMAS A. QUINN, appellee.

No. 48358.

(Reported in 64 N.W.2d 323)

May 4, 1954.

Leo A. Hoegh, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, Richard M. Ackley, County Attorney, Wapello County, and Herman T. Bailey, Assistant County Attorney, for appellant.

Jones, White & Starr, of Ottumwa, for appellee.

MULRONEY, J.—The question of general interest presented by this appeal by the State of Iowa from a directed verdict of acquittal is whether a partner's obtaining partnership funds by false pretense constitutes the crime of obtaining money by false pretenses defined in section 713.1, Code, 1950. The record shows defendant and Harry W. Stanfield were partners doing business, under the name of Midwest Used Car Sales, in Ottumwa. The indictment charged that defendant "unlawfully, designedly, by means of false pretense and with intent to defraud [did] obtain from his then partner, Harry W. Stanfield, the sum of $113.70." The State's case was that defendant purchased a car for resale by the partnership with his own money and he told Stanfield he had paid more than he actually did pay for the car and thereby induced Stanfield to draw a check to defendant on the partnership funds in excess of the purchase price of the car, falsely representing to Stanfield that the amount he received was actual reimbursement for said purchase. They were equal partners and the sum stated in the indictment is one half of the alleged excess. Actually both partners had equal rights to write checks on the partnership bank account, and part of the State's case is that on other occasions defendant merely wrote checks on the partnership account to himself to reimburse himself for cars he purchased and turned over to the partnership, and the checks he drew were actually in excess of the amounts he had expended from his personal funds.

I. Section 713.1, Code, 1950, provides: "If any person designedly and by false pretense * * * and with intent to defraud, obtain from another any money * * * he shall be imprisoned * * *."

The gist of the crime of obtaining money by false pretenses is that the victim transferred title and possession to the wrongdoer under the influence of the false pretenses. As stated in 35 C. J. S., False Pretenses, section 24: "title as well as possession must pass, although the title may be only voidable."

In State v. Loser, 132 Iowa 419, 427, 104 N.W. 337, 339, the opinion states: "If the false pretenses induce the owner to part with his property, intending to transfer both title and possession, the crime is cheating by false pretenses. If, on the other hand, one by fraud, trick, or false pretense induces the

owner to part merely with the possession of his property, there being no intent to pass the title, and the party who receives it took it with intent fraudulently to convert it to his own use, the crime is larceny."

In State v. Chamberlain, 215 Iowa 273, 275, 245 N.W. 277, 278, the above language from the Loser case is quoted and the comment made that it states "quite the universal rule."

Again in State v. Evans, 229 Iowa 932, 937, 295 N.W. 433, 435, the opinion states: "Appellant was accused of the crime of obtaining property by false pretenses. Accordingly, it was essential that the State prove that, when appellant obtained the property from Addie Otto, she intended to pass title to him as a result of the transaction."

■ II. The crime of obtaining money by false pretenses differs from, but is somewhat akin to, embezzlement. In embezzlement the property is fraudulently appropriated by the person who has rightful possession, and in obtaining money by false pretenses the property is acquired in the first instance by means of the false pretense. 29 C. J. S., Embezzlement, section 1.

■ The general rule is that partners cannot embezzle partnership funds. The rule stated in 29 C. J. S., Embezzlement, section 16, is: "In the absence of statutes so providing, it may be stated as a general rule that partners cannot embezzle partnership funds * * *, because of their joint interest or ownership therein."

In Gary v. Northwestern Mutual Aid Assn., 87 Iowa 25, 30, 53 N.W. 1086, 1087, we approved an instruction which stated: "'* * * 'the use or appropriation of the funds of the partnership [by a partner] to his private use * * * would not constitute the crime of embezzlement, nor would it be a criminal act.'" In this opinion (page 31) it is also stated: "The question is whether a member of a partnership is guilty of embezzlement by appropriating the funds of the partnership to his private use. * * * In 6 Am. and Eng. Encyclopedia Law, 479, under the head of 'Embezzlement,' is the following: 'Partners sustain the character of principals as well as agents, and have a community of property and interest in partnership effects, and therefore cannot embezzle the funds of the partnership which they wrongfully apply to their individual use without mutual consent. But this

immunity does not attach as long as the partnership contract is executory only, or depends upon unperformed conditions precedent.' This announcement of the law is fully sustained by the cases referred to, namely, Napoleon v. State, 3 Tex. App. 522; Reg. v. Wortley, 6 Denison & P. Brit. Cr. Cas. 332,—and is consistent with the recognized rights of partners in the partnership assets."

In Pierce v. Commonwealth, 210 Ky. 465, 468, 276 S.W. 135, 136, it is stated: "* * * courts have uniformly held that a partner cannot be guilty of the offense of embezzling partnership funds."

In State v. Reddick, 2 S. D. 124, 125, 48 N.W. 846, 847, it is stated: "* * * the courts have uniformly held that a general partner cannot be convicted of embezzling partnership property [funds] * * *."

In State v. Sanders, 23 Ariz. 20, 24, 201 P. 93, 94, 17 A. L. R. 980, 982, the opinion cites and quotes from a number of authorities, all supporting the stated conclusion that: "A partner cannot be guilty of embezzlement of partnership funds * * *." The citations in the foregoing opinion include our opinion in Gary v. Northwestern Mutual Aid Assn., supra.

III. As previously stated the crimes of embezzlement and obtaining money by false pretenses are somewhat allied. Broadly stated, embezzlement can be termed a crime against the title, and obtaining money by false pretenses can be termed a crime against both possession and title. It would seem the logic of the holding that a partner cannot be guilty of embezzling partnership funds would compel the conclusion that a partner cannot be guilty of obtaining partnership funds by false pretenses. The reason, usually stated, why a partner cannot be guilty of embezzling partnership funds is because the relationship places the title to partnership funds in all of the partners. The same reason exists when the charge is that one partner obtained partnership funds by false pretenses. No one can be guilty of obtaining, by false pretenses, money that he owns. 22 Am. Jur., False Pretenses, section 33.

In 35 C. J. S., False Pretenses, section 24, page 667, the rule is stated: "A partner cannot be guilty of obtaining money

by false pretenses where the money belonged to the partnership * * *."

We find no cases holding contrary to the above stated rule. There are cases holding that obtaining money from one with whom the accused has entered into a contract to form a partnership is not within this principle. Commonwealth v. Brown, 167 Mass. 144, 45 N.E. 1; State v. Foot, 100 Mont. 33, 48 P.2d 1113. Usually the courts have held the procuring of the money for the account of the partnership of which the accused and the victim were members would not constitute the crime because the victim as a partner retained an interest in the fund. State v. Smalley, Mo., 252 S.W. 443; State v. Woerth, Mo., 256 S.W. 456. But People v. Cravens, 79 Cal. App.2d 658, 180 P.2d 453, the case relied upon by the State, holds the crime of false pretenses can be established by evidence the accused induced the victim to deposit money in a partnership account from which the accused withdrew the money for his own personal use. The cases are not in point here for the State's case did not involve a scheme to get the victim to place private funds in the partnership account.

In State v. Brown, 38 Mont. 309, 315, 99 P. 954, 957, the charge was larceny and the defense was that the victim and the accused were partners and the money obtained was partnership money. The court held the evidence did not establish an agreement of partnership but in the course of the opinion it is stated: "A partner cannot commit larceny of the funds or property of the partnership of which he is a member, because the interest or ownership of such partner extends to every portion of its property. (Revised Codes, sec. 5469.) Each partner combines in himself at once the character of principal and agent, and may possess and dispose of the firm's funds and property, even to the extent of appropriating them to his own use, by withdrawing them from the common fund."

The above case is cited in a later Montana opinion, State v. Foot, 100 Mont. 33, 37, 48 P.2d 1113, where the charge was obtaining money under false pretenses, and one of the defenses was that the defendant and victim were partners. The opinion seems to recognize the defense would be good under the author-

ity of the Brown case but it was not established, for the court held the evidence was insufficient to establish a partnership.

One other case where the charge was obtaining property by false pretenses and the defense asserted was that defendant and victim were partners and the property was partnership property is State v. Mendenhall, 24 Wash. 12, 63 P. 1109. As in State v. Foot, supra, the court held the evidence did not establish the partnership; hence, the cases sustaining the doctrine that one partner cannot commit larceny of the goods of the partnership were held not in point.

One old English case is directly in point. It is Reg. v. Evans, decided in 1862, Court of Criminal Appeal, and reported in Cox's Criminal Cases, Volume IX, pages 238, 241. Here a partner's conviction of obtaining money by false pretenses was quashed and the following quotation from the headnote shows how closely the case is in point on the facts:

"A. having invented an improved lamp, entered into a partnership deed with B. and C. for carrying out and vending the subject of the invention. By a subsequent verbal agreement with his co-partners he was to travel about to obtain orders for the lamps upon a commission. On all orders received by him such commission (besides his travelling and personal expenses) was to be paid to him as soon as he received the orders, and to be payable out of the capital funds of the partnership before dividing any profits. By falsely representing to his co-partners that he had obtained orders upon which his commission would be 121.10s., he obtained from them that amount: Held, that, as the subject-matter of the misrepresentation would come under consideration in the partnership accounts, such misrepresentation was not sufficient to sustain an indictment for false pretenses against A."

In the course of his opinion in the above case Pollock, C. B., stressed the fact that the defendant's misrepresentation "would be overhauled when the accounts were gone into, and therefore * * * the defendant was not guilty of obtaining money by false pretenses."

There seem to be but few cases on the precise subject where

the charge against the partner was obtaining partnership funds by false pretenses. This is probably because there is little need for the employment of pretense by a partner in order to secure the partnership funds. But all of the cases involving the prosecution of a partner for embezzlement or larceny of partnership funds are in point. The State argues the statute here involved merely states this crime is committed if the wrongdoer "obtain from another" any money, and this differs from the larceny statute (709.1, Code, 1950) which employs the phrase "the property of another", and the embezzlement statutes (chapter 710, Code, 1950) which use such terms as "belonging to another", "property of another" or "which is partly the property of another and partly the property of such * * * person."

The difference in language is not material. Justice Weaver, speaking for the court in State v. Clark, 141 Iowa 297, 302, 119 N.W. 719, 721, said: "The offense which the statute creates can be committed only by obtaining money, goods, or property *belonging* to another by means of some false pretense or false token." (Italics supplied.)

The gist of the offenses of larceny, embezzlement and false pretenses is the felonious taking and conversion of the property of another. They differ only in the means by which the taking and conversion is accomplished. All of the authorities, with excellent reasoning, hold that a partner of a going partnership cannot be guilty of larceny or embezzlement by proof of a taking and conversion of partnership assets because, as was stated in our opinion in the Gary case, supra, at page 32 of 87 Iowa: "The partners have a community of property and interest in the partnership effects [and] in law they are treated, in a qualified sense, as joint tenants of the partnership property, having an interest therein *per my et per tout.*"

Upon the same reasoning the taking and conversion by a partner, in a going partnership, of partnership assets, accomplished by false pretenses, cannot constitute the crime of obtaining property from another by false pretenses. We feel reason and authority support the statement of the rule previously quoted from 35 C. J. S., False Pretenses, section 24, to the effect that a partner is not guilty of obtaining money by

false pretenses when the money belonged to the partnership.— Affirmed.

OLIVER, WENNERSTRUM, SMITH, HAYS, and LARSON, JJ., concur.

SMITH and OLIVER, JJ., concur specially.

THOMPSON, J., BLISS, C.J., and GARFIELD, J., dissent.

SMITH, J. (concurring specially)—I concur completely in the majority affirming opinion. But in view of the dearth of cases involving the charge of cheating by false pretenses between partners and the partnership it is well to delve deeper into the question of the partnership relation at common law.

The need for doing this is emphasized by the attack (unjustified I think) made here upon the conclusion of the majority as a "reproach to the law and to the courts which administer it." It is even suggested that "hidebound precedents and unrealistic legal fiction" are "standing in the way of punishment of a wrongdoer" and should be "swept away" and that "no rule of stare decisis should be allowed to prevail."

I. The proposition advanced by and on behalf of the State is based on a theory that the partnership is an entity similar to a corporation, completely separate and distinct from the individuals who compose it.

The whole concept of partnership refutes this suggested analogy. In Iowa we have held (properly, I think) that the partnership, *in its dealing with third persons,* is a legal entity. It may enter into contract. It may sue and be sued. There is even a limited right to own property separate and distinct from that of the individual partners. But we have never held, nor has it been held elsewhere, so far as I can find, that partners and the partnership can litigate among themselves in law courts questions arising out of the partnership before there has been an accounting. "The court of equity is the chief and appropriate tribunal for the settlement of all controversies growing out of partnership transactions as such." Mechem's Elements of Partnership, Third Ed., section 148.

We quite recently (1945) said: "It is almost universally held * * * that a law action is not maintainable between partners with respect to partnership transactions unless there has been an accounting or settlement of the partnership affairs." Johanik v. Des Moines Drug Co., 235 Iowa 679, 686, 17 N.W.2d 385, 390. See 68 C. J. S., Partnership, section 109; 40 Am. Jur., Partnership, sections 460, 465; Crane on Partnership (Hornbook series 1938) 310; Burdick on Partnership (1917) Third Ed. 330; Mechem's Elements of Partnership, Third Ed., sections 130–132, 148.

The cases and textbooks quite generally state the reason for the doctrine to be the law court's inherent inability to examine and adjust accounts, the fact that in absence of an accounting no cause of action can be shown to exist, and the further fact that a party cannot be a plaintiff and defendant at the same time.

Any analogy between partnerships and corporations as legal entities ends when we consider the legal relationship of partners among themselves and with the partnership. It is not a separate entity as to them. They are usually joint owners of its property and jointly entitled to its possession, sharers in its profits, liable for its obligations, and agents in the conduct of its business. There is in a partnership such a merging of relationship as to make unthinkable an action at law between them over partnership transactions. In that respect the partnership bears no similarity to the corporation. One is a relationship created by contract, the other an artificial being created by law.

It has been aptly said to be "impossible to determine whether or not the defendant partner is in fact indebted to the plaintiff partner until the partnership accounts are settled and the true standing of the parties has been ascertained." Malott v. Seymour, 101 Cal. App.2d 245, 247, 225 P.2d 310, 311, citing Mechem's Elements of Partnership, Second Ed., section 204.

This basic doctrine which forbids a court of law to entertain suits between partners and between them and their partnership in matters growing out of the partnership relation should be conclusive as to any criminal charge against a partner of obtaining property of or from his partnership by false pretenses. Every argument in support of the common-law rule can be

urged with even greater force when the criminal law is invoked. A logical and time-honored rule that forbids criminal prosecution for an alleged fraud that the "victim" could not even assert in a court of law can hardly be brushed aside as a mere "technicality."

II. It is the invariable rule that penal statutes are to be strictly construed and that any doubt must be resolved in favor of the one accused. Citation of cases seems unnecessary. "In Iowa all crimes are statutory. No matter how reprehensible an act may be, in the absence of a legislative penalty there can be no criminal prosecution. A strict construction * * * against the State is the recognized rule and the burden is upon the State to prove every element essential to constitute the crime charged." State v. Hansen, 244 Iowa 145, 147, 55 N.W.2d 923.

The statute (section 713.1, Iowa Code, 1950) condemns the obtaining of property "from another" by false pretense. We are asked to construe the word "another" to include a partnership entity of which defendant is a member—a *"part."*

Manifestly this would be a liberal construction in favor of the State, in view of the close legal and personal relation between partner and partnership in regard to partnership property and business transactions. A statute that expressly compelled or justified such a construction would probably be of doubtful wisdom, in view of the relationship it would invade.

The legislature might well hesitate to impose on the criminal court the complex procedure necessary to determine ("beyond a reasonable doubt") whether a partner has defrauded the partnership or his fellow partner. And we would certainly violate every rule of construction if we held our legislature has done it under this language.

This does not mean a defrauded partner has no remedy. The doors of equity are open to him. He can there have determined whether he has in fact been defrauded and the extent of his loss if loss be shown. This the criminal court cannot do.

The majority opinion is right.

OLIVER, J. (concurring specially)—I concur fully in the majority opinion and the concurring opinion of Judge Smith, but will make some reference to the dissenting opinion.

It states this case is "a manifest failure of justice"; "the defendant, by false representations believed and relied upon by his inexperienced partner" obtained partnership funds; there was a "series of gross frauds"; if "the law must fold its hands * * * because of certain technicalities * * * justice will be denied"; "such a situation is a reproach to the law and to the courts"; "if hidebound precedents and unrealistic legal fiction stand in the way of punishment of frauds such as the record shows here, they should be swept aside."

The foregoing and other language of like temper is based upon evidence for the prosecution only. Defendant's plea of not guilty was a denial of the charge against him. In accordance with established rules the prosecution first proceeded with its case. When its case failed, defendant was discharged without the introduction of any evidence for him. Under the circumstances the trial court properly expressed no opinion upon the case. In ordering the directed verdict it stated: "Of course, the court is not determining here the facts. In other words, I presume, as indicated by counsel for the defendant, that their version of these transactions would be other and different from the version submitted by the State's witnesses." The complete statement of the trial court which covers about six printed pages is a thoughtful and dispassionate review of the questions involved in the case.

The dissent observes no such limitations. It finds the facts of the case, based upon the evidence of the prosecution only, and it proceeds to declare and publish that defendant was guilty of gross frauds. This novel procedure overlooks the important circumstance, recognized by the trial court, that because the prosecution failed, defendant had no opportunity to offer evidence of his version of the facts. Under such circumstances a finding defendant was guilty of the crime charged or of some other offense would appear not to be sound. There would seem to be no good reason which would justify a court in thus prejudging a case and branding a defendant.

There is a statement in the dissent, that the "situation is a reproach * * * to the courts * * *." Where, as here, the court merely declines to depart from an established rule of law, there

would seem to be no factual basis for such a charge. The dissent cites no authority sufficient to justify it.

The dissent states: "The joint-ownership theory * * * has too long protected thieves and embezzlers. The majority now extends its cloak to cheats."

The statement relative to the protection of thieves and embezzlers is merely an assault upon the general rule discussed in the majority opinion, that a partner cannot be guilty of larceny or embezzlement of partnership funds. The other statement, "The majority now extends its cloak to cheats", should not be understood as charging that the majority of the court is actually in league with cheats. The reader may be assured the dissent did not intend any such charge. Nor should the reference herein to vigorous language of the dissenting opinion be considered as implying that instrument should be classified as "cacoethes dissentiendi."

THOMPSON, J. (dissenting)—I am convinced the majority opinions confirm a manifest failure of justice, and I cannot concur. It is shown by the record that the defendant, by false representations believed and relied upon by his inexperienced partner, obtained for himself a share of the partnership funds to which he was not entitled. So far as the record discloses there is no denial of the series of gross frauds committed by the defendant. It is true, of course, the defendant entered a plea of not guilty, and it may have been that if he had reached the point of offering evidence he would have denied some or all of the material evidence for the State. But we are dealing with the record as it stood when the verdict was directed. The effect of the majority opinions is that, granting all the State proved was true, there was still no crime of cheating by false pretenses committed. If, then, the law must fold its hands and say that because of certain technicalities concerning joint ownership of partnership funds it can do nothing, justice will be denied. Such a situation is a reproach to the law and to the courts which administer it. Law and justice should run side by side. When they diverge so that men must say the law is the law and justice is something different, the courts should re-examine their thinking. If hidebound precedents and unrealistic

legal fiction stand in the way of punishment of frauds such as the record shows here, they should be swept aside. No precedent, no rule of stare decisis should be allowed to prevail when reason is opposed and manifest mischief will be done by following them.

The courts are fond of saying they will look for the substance rather than for the form. I commend this rule to the majority in the case at bar. Quinn and Stanfield entered into partnership for the purpose of dealing in used automobiles. Quinn was experienced in the business; Stanfield was not. Stanfield furnished the working capital, by putting in $3500 of his own money, and by loaning Quinn an equal amount. Quinn for a time did all, or almost all, of the buying of used cars, which the partnership in turn hoped to resell. The record shows that on several occasions when he purchased cars for the firm Quinn paid for them with his own funds, but told Stanfield he had paid a larger amount. Through these misrepresentations he induced Stanfield to write checks on the partnership account payable to him and so obtained from Stanfield his (Stanfield's) interest in the partnership funds so withdrawn, and procured a share of such funds considerably larger than he was entitled to receive. This is the situation which the majority says the criminal law cannot reach.

The only direct authority cited by the majority is the quotation from 35 C. J. S., False Pretenses, section 24. This statement of the law is supported by one citation in the permanent volume of 35 C. J. S., State v. Foot, 100 Mont. 33, 48 P.2d 1113. An examination of the case shows the actual holding was there was no partnership proven. It cannot be in point. Two other cases are now cited under this note in the latest (1954) pocket part for 35 C. J. S. These cases are not referred to by the majority. They are State v. Grumbles, 100 S. C. 238, 84 S.E. 783, and State v. Simmons, 209 S. C. 531, 41 S.E.2d 217. The opinion in State v. Grumbles is short, and in regard to an indictment for "breach of trust with fraudulent intent" says only there could be no conviction if the two were partners. There is dictum in State v. Simmons which follows State v. Grumbles. Reference will be made to it at a later point. None of the three cases cited

as authority for the flat statement of the law set out in 35 C. J. S., False Pretenses, section 24, in fact supports it.

The majority concedes there are few cases directly in point on the question at issue. In fact there are none cited to us or which research has discovered. The defendant and the several majority opinions rely upon cases holding one partner may not be convicted of embezzlement of partnership funds. The majority says these are bottomed upon the principle that the title to partnership funds is in all of the partners, and one cannot be guilty of embezzlement of funds he owns. By analogy it is then reasoned one cannot be guilty of obtaining by false pretenses funds he already owns.

The theory of joint ownership of partnership funds is one which has its proper place in civil matters, where questions of partnership indebtedness or other dealings with third parties are involved. But it is, after all, no more than a legal fiction, and as such should not be pursued to the point of making it a cloak for gross cheats. In fact, in Iowa we have definitely held the property does not belong jointly to the individual partners, but to the partnership as a separate legal entity. "The property does not belong separately to the individual partners, but to the distinct entity." Jensen v. Wiersma, 185 Iowa 551, 552, 170 N.W. 780, 4 A. L. R. 298. To the same effect is State v. Pierson, 204 Iowa 837, 842, 216 N.W. 43, 46, from which is quoted: "The partnership was an entity, distinct from its members. The funds deposited belonged to the partnership, and not to the director of the bank [the latter being one of the partners]. The ultimate interest in the partnership funds belonged, in greater or less part, to others than the director member. *To the extent of their interest, the deposit was not that of funds belonging to him.*" (Italics supplied.)

These cases negative the thought, on which the majority opinions are apparently based, that each partner has such title and interest in the partnership property that he cannot be guilty of obtaining it by false pretenses because he already owns it. The rule in Iowa is definitely established the partnership funds belong to the partnership as a separate legal entity; and State v. Pierson, supra, also enunciates the realistic principle that the funds do not belong in toto to each partner individually, but

the "ultimate" interest of each partner may be traced, and he owns no more than whatever his actual interest may be. Nor am I willing to agree, as the majority opinions and the authorities cited seem to reason, that because the defrauded partner has a remedy in the civil law by way of an accounting suit, this is adequate redress for the commission of a criminal act, and in fact, therefore, no crime has been committed. Nor can I accede to the idea that the difficulty of proving a fraud is a cogent reason for holding the criminal law does not apply. In fact, in the instant case, and speaking from the facts in the record, the fraud was easily proven and abundantly apparent.

In People v. Cravens, 79 Cal. App.2d 658, 663, 180 P.2d 453, 456, the victim was induced by false pretenses to place money in a partnership account from which the defendant then withdrew it. The California Court said: "We are not satisfied that proof that the wrongdoer afterwards converted the partnership property to his own use while the victim was still subject to the influence of his false pretenses would not constitute the crime of obtaining money or property by false pretenses." The distinction drawn by the majority between this holding and the case at bar seems most fragile.

In any event, Jensen v. Wiersma and State v. Pierson, both supra, and other Iowa cases to the same effect seem to destroy the basis for the majority holding, which is bottomed upon the thought of joint ownership of the property by all the partners. The majority leans heavily upon Gary v. Northwestern Mutual Aid Assn., 87 Iowa 25, 53 N.W. 1086. So far as it holds the title to the partnership property is in the partners jointly, rather than in the partnership as a separate legal entity, and that the real interest, the "ultimate" interest of each partner, cannot be traced even when realism demands it, the case is in effect overruled by Jensen v. Wiersma and State v. Pierson, both supra. It is suggested that because the Gary case was decided in 1893 and the legislature has not seen fit to change the cheating statute since that time, we must recognize its concurrence in the law as there laid down. If we grant, as courts often do, that legislatures are all-seeing and all-knowing, it still seems to me that the majority here reasons from a false premise which makes its con-

clusion unsound. If we are to assume the legislature was advised of the Gary case, we must also assume it knew of the later cases of Jensen v. Wiersma and State v. Pierson, both supra, and so found no necessity for legislation on its part. It is also to be noted the Gary case dealt with embezzlement, while we are here concerned with cheating, which is governed by a materially different statute.

The Iowa false pretense statute, set out by the majority, says, "If any person designedly and by false pretense * * * and with intent to defraud, obtain from another any money * * *." I think the majority overlooks the fact that, even under its theory of joint ownership, Quinn did obtain from Stanfield certain property. He obtained not only his own interest in the funds of the partnership, but Stanfield's. An undivided interest in money is property. The material point is not that Quinn by his fraud secured property in which he had an undivided interest, but that he also obtained Stanfield's interest. It would be difficult to convince Stanfield that the defendant actually obtained nothing from him. Of course, one partner may cheat another by false representations which induce the cheated to make over an undue share of the partnership assets to the cheater; and the courts should disregard any technical fiction which supports a holding that nothing can be done about it. The advisability of a realistic approach to these problems was pointed out in Chisholm v. Chisholm Construction Co., 298 Mich. 25, 30, 298 N.W. 390, 393, where the Michigan Supreme Court said: "However, in order to prevent an injustice or fraud, we do not hesitate to disregard the fictional entity of the partnership and regard the members as individuals." If it is right to disregard the "separate entity" theory to prevent injustice, why is it not equally incumbent upon the courts to refuse to follow the "joint ownership" fiction for the same reason?

The majority opinions extend the protection of the "joint ownership" theory to wrongdoers one more step. They concede in effect there is no case in which it has been applied to cheating by false pretenses. They rely upon the analogy of the embezzlement cases. I believe the theory of these cases is unrealistic and wrong. An interesting statement, illustrative of much that, it

seems to me, is wrong, not only with the majority holding here but with the thinking of too many courts generally, is found in the opinion of the learned Chief Justice of South Carolina in the recent case of State v. Simmons, supra, at page 536 of 209 S. C., page 219 of 41 S.E.2d: "Under the common law, and under the accepted law of this State, a copartner in a business cannot be convicted for defrauding the partnership. * * * *It may be that there is no sound reason for this principle of law,* but it has existed for time immemorial, and I see no reason in the instant case for ignoring or modifying [it]." (Italics supplied.) I agree with the South Carolina jurist that there is no sound reason for the rule; but I cannot concur in his conclusion it should be followed because it is venerable with age. Error persisted in is none the less error. There is much to be said for the rule of stare decisis, and it may upon occasion be better to adhere to principles of doubtful soundness so that the law may be settled. But this should never be done when the rule is not only palpably in error but injustice will be done and manifest mischief sanctioned or promoted. In such cases it is far better for the law to admit its error and correct it as speedily as may be. The majority here is not only confirming an unsound rule based upon nothing more than a legal fiction, but is extending it into the field of cheating by false pretenses, where it has never before been squarely held to apply. I am not surprised that the able trial court thought himself bound by precedent; but appellate courts have a much wider latitude in correcting their previous mistakes.

The joint ownership theory—repudiated in Iowa by Jensen v. Wiersma and State v. Pierson, both supra—with its attendant unsound legal fiction that one may not steal or embezzle that which he already owns has too long protected thieves and embezzlers. The majority now extends its cloak to cheats. The time cannot be far distant when the courts will look at the partnership relation in these cases as it actually is. I had hoped this court might point the way back to reality.

If the law is to command the respect of the people as an instrument of justice, it must be vigilant to look to the substance instead of the form, and to avoid being led astray by techni-

calities which serve only to protect the wrongdoer and thwart the righteous. I do not agree the law is helpless to punish.

I would hold the trial court in error.

BLISS, C.J., and GARFIELD, J., join in this dissent.