STATE of Iowa, Appellee,

v.

Douglas Frank DURHAM, Appellant.

No. 54948.

Supreme Court of Iowa.

April 13, 1972.

Raymond Rosenberg, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Allen J. Lukehart, Asst. Atty. Gen., and Robert A. Gottschald, County Atty., for appellee.

HARRIS, Justice.

The wrong charge was brought against the defendant in the wrong county. He appeals his conviction of larceny in Warren County. We reverse.

Thomas M. Geesaman is an insurance salesman who resides in Indianola, Warren County, Iowa. Defendant, a resident of Des Moines, Polk County, Iowa, was his regular customer. On June 8, 1970, Geesaman called at defendant's residence to pick up an insurance premium. Geesaman was asked by defendant if he would like to

make some quick money. He was receptive.

According to state's testimony, defendant claimed to know the Mafia, or was tied up with the Mafia "or something like that." And, " * * * this fellow knew where they had Billy Sol Estes's money * * * he had saved when he was stealing." To Geesaman the idea was, in his own words, "real great. * * * we could double our money by giving good money for this Billy Sol Estes money."

By Friday, June 11th Geesaman had turned cool. But he agreed to meet a man at an establishment in Des Moines. At the time and place agreed he met Pete De-Phillips. Upon inquiry, Geesaman told DePhillips he had changed his mind. DePhillips ordered coffee and they continued to talk. Eventually DePhillips suggested he would consider it a loan. If Geesaman would loan him $700 he would be refunded $2000. Geesaman agreed, "okay, I will get the $700." They agreed to meet at another place in Des Moines that very afternoon at 4:00.

Geesaman went home and again had second thoughts. After talking with his wife he returned to the agreed place and told DePhillips he was backing out. DePhillips was angry, accused Geesaman, "You really messed us up." DePhillips wanted Geesaman to talk with defendant and placed a phone call. Geesaman recognized defendant's voice. He quoted defendant as threatening, "I don't know about your health, but my health will not probably be in the best of shape." Geesaman heard other voices on the phone extending threats to defendant.

Geesaman, fearing for his own and defendant's health, agreed to meet DePhillips at a place in Des Moines the next morning with the $700. He did so but had sincerely cooled. In surrendering the $700 he informed DePhillips all he wanted was his $700 back. He was told he could pick it up Wednesday at defendant's house.

Wednesday defendant was asleep. Geesaman went back Friday afternoon and was told by defendant, "Just don't rock the boat. We are dealing with a lot of mean, mean guys here. * * * These guys won't hesitate to take care of you."

At this point Geesaman was quite resigned to having lost his $700. Then on June 23 he got another call from defendant asking to meet him at a place, again in Des Moines. He did. According to Geesaman defendant there advised, "one of the fellows had got caught and was in jail * * *" and those with whom they were dealing "had all our names and they were tied up some way in narcotics and that we had to come up with $3000 for bail money on this fellow, and that I would have to come up with $1500, that he was going to try to come up with also $1500." Geesaman agreed to try and returned home.

After visiting with his family Geesaman went to the sheriff. An agent with the Iowa Bureau of Criminal Investigation was called. By arrangement with authorities Geesaman went to defendant's home in Des Moines. He had a tape recorder hidden in his car. He advised defendant he was unable to get the money at the bank and was told in response by defendant, "You know as well as I do what is going to happen. That is why I am carrying this." Defendant patted his stomach. There was a bulge which Geesaman took for a gun.

By arrangement with authorities Geesaman told defendant later he still did not have the money. He would be able to get it between 5:30 and 6:00. He told defendant he would have to come to Indianola for it.

Except for whatever fears or hopes Geesaman may have taken home with him, this is the first of the events occurring in Warren County. The reason for the shift may be disputed. Geesaman freely concedes it was in order to raise a charge in Warren County. Defendant did appear in

Indianola, was handed an envelope containing money, prepared by the authorities and furnished Geesaman for the purpose. He was immediately arrested.

Defendant was charged and tried in Warren County for robbery. He appeals his conviction of the included offense of larceny.

I. The owner's nonconsent has always been an indispensable element to the crime of larceny. State v. Potter, 195 Iowa 163, 191 N.W. 855. The necessity of this element appears most clearly in our cases which have traced the distinction between larceny by trick and false pretenses. See State v. Chamberlain, 215 Iowa 273, 245 N.W. 277; State v. Sabins, 256 Iowa 295, 127 N.W.2d 107. Of course fraud as well as force or threat of force can negate consent of the owner. State v. Ritchie, 196 Iowa 352, 190 N.W. 943.

But these authorities do not reach the situation made out by the state's evidence.

"Larceny is not committed if the owner consents to the taking of his goods, even though the consent is given solely for the purpose of apprehending the taker in the commission of the act, * * *." 52A C.J.S. Larceny § 24a, page 444.

Although no Iowa cases are cited, we approve the statement appearing in the annotation at 10 A.L.R.3d 1126:

"It has been held that even though an accused conceives a larcenous scheme, where it becomes known to the property owner and the property owner informs the police and furnishes the property for taking so as to apprehend the accused, the owner thereby consents to the taking and the accused is not guilty of larceny." (Citations.)

We conclude the defendant was not guilty of larceny on this record in Warren County. His motion for directed verdict should have been sustained. The judgment of the trial court must be and is

Reversed.

All Justices concur.