15907

STATE v. SIMMONS
(41 S. E. (2d) 217)

*Messrs. O. L. Long* and *R. E. Babb,* of Laurens, for Appellant,

*Messrs. Hugh Beasley,* Solicitor, of Greenwood, and *Blackwell, Sullivan & Wilson,* of Laurens, for Respondent,

January 24, 1947.

MR. CHIEF JUSTICE BAKER delivered the majority opinion of the Court.

I concur in that portion of the opinion of Mr. Justice Fishburne in which he overrules the exceptions of the appellant relating to the sufficiency of the indictments, the admission in evidence of the forged notes and

mortgages, and the admission in evidence of the testimony of R. C. Adair, the cashier of the Bank alleged to have been defrauded, as to the contents of certain claim and delivery papers; but I feel impelled to dissent to that portion of his opinion which finds no error in the remarks made by the trial Judge during the trial of the case and the rulings made on the admissibility of proffered testimony. It appears to me that the appellant did not receive the fair trial guaranteed to him by our State Constitution.

The indictments charged that the appellant forged certain notes. and mortgages with intent to defraud M. S. Bailey & Sons, Bankers, a partnership. This partnership was composed of W. J. Bailey and the heirs of M. S. Bailey. W. J. Bailey was the "President" or manager of the Bank, and controlled its affairs.

Prior to entering upon a discussion of the exceptions which the opinion of Mr. Justice Fishburne overrules and to which I do not assent, it is well that a few facts, some of which are additional to those related in his opinion, should be stated. Mr. Adair was instructed by Mr. W. J. Bailey to handle *any* papers presented by the appellant, and time after time, paid out money on the mere written orders or instructions of the appellant, carrying these written orders on a separate file from appellant's bank account as cash items, a great number of which transactions were never entered upon the books of the bank. We quote from the record: "Q. The practice of the bank was when an order came in, your orders were to cash it regardless of what it was or for whom it was, and when such orders came in they were put on one of these little sharp files; that is what you mean by the 'cash file', isn't it? A. That's right." Mr. Adair admitted that for several years the appellant acted with more authority in the bank than anybody other than W. J. Bailey; and that when a bank examiner objected to the appellant's line of credit at the bank, W. J. Bailey placed $60,000.00 of the Clinton Cotton Mill's money, of which Mill he was President, with the bank to take care of any loans to the appellant. Some of ap-

pellant's checks didn't pass through the regular channels of the bank, but were placed on the "file" above referred to under instructions from the appellant. Warrants were not issued for the appellant until five months after even Mr. Adair, the cashier of the bank, knew that the notes and mortgages were fictitious and forgeries, and then thereafter notes and mortgages which were genuine were turned over to the appellant by this bank for collection. The testimony further indicates that a Mr. Watson, the teller in the bank, was much better informed as to what was goin on therein than was Mr. Adair, the cashier, and was aware of the fact that a great number of the notes and mortgages placed in the bank by the appellant were fictitious and forged instruments. The majority of the funds paid out by the bank for these forged papers were used to take up orders and checks of the appellant which had been placed on the "file".

The fact that the prosecuting bank at one time prepared (and probably filed) a claim against a bonding company for the alleged default of the appellant as an employee of the bank is more or less corroborative of his testimony of his fantastic connection with W. J. Bailey and the partnership bank.

The defense of the apellant was not that the instruments in question were not forged, but that he forged them under the instructions of W. J. Bailey, the dominating partner in the banking partnership and the manager thereof, for the purpose of satisfying the bank examiner; and that all of his transactions were for the benefit of W. J. Bailey, he (the appellant) merely drawing a weekly salary. In other words, that the business conducted in the name of H. W. Simmons was in fact that of W. J. Bailey.

Article 5, Section 26, of the Constitution provides: "Judges shall not charge juries in respect to matters of fact, but shall declare the law".

Interpreting this section of the Constitution this Court has held that a trial Judge cannot convey to the jury, either expressly or impliedly, his opinion of

the force and effect of testimony upon any question of fact at issue. *State v. Pruitt,* 187 S. C. 58; 196 S. E. 371. And it has been frequently held that a trial Judge should not by remarks in ruling upon testimony offered, indicate opinions or express views reasonably calculated to influence the jury in deciding a material issue of fact. *Powers v. Rawles,* 119 S. C. 134; 112 S. E. 78. *State v. Bagwell,* 201 S. C. 387; 23 S. E. (2d) 244.

Under the common law, and under the accepted law of this State, a copartner in a business cannot be convicted for defrauding the partnership. *State v. Grumbles,* 100 S. C. 238; 84 S. E. 783. It may be that there is no sound reason for this principle of law, but it has existed for time immemorial, and I see no reason in the instant case for ignoring or modifying such principle of law.

It is well established that in the proof or disproof of fraud, the inquiry assumes a wide range and the rules of evidence are not so strictly enforced as in other cases. *Border State Lumber Co. v. Edwards et al.,* 103 S. C. 391; 88 S. E. 537.

The foregoing briefly but reasonably covers the law applicable to the exceptions to be discussed. If the appellant was acting merely as the agent of W. J. Bailey, and under his instructions, and if a conviction against Bailey could not be had, then a conviction of the appellant is improper. It was a factitious issue in the case whether the appellant was acting as the agent of W. J. Bailey and under his instructions in forging the notes and mortgages in question, all of which were made payable direct to the partnership bank, and did not even carry the endorsement of the appellant.

Proceeding in an orderly way in an effort to establish his defense, the appellant introduced in evidence a letter he had written to W. J. Bailey addressed to Hot Springs, Arkansas, dated April 24, 1943, which tended to show that he had turned into the partnership bank on one occasion the sum of $300.00, and on another occasion

the sum of $613.29, both of which were for the benefit of W. J. Bailey. When this letter was admitted in evidence, and which in our opinion was material to the defense of the appellant, the trial Judge remarked: "It is perfectly harmless". Such remark coming from the Court could easily have led the jury to conclude that no weight was to be attached to this evidence, and amounted to an expression of the trial Judge's opinion that the evidence was worthless.

Again when the appellant was undertaking to elicit from the cashier of the bank the information that Mr. Bailey and the appellant had become unfriendly and that the appellant had stopped coming to the bank and to Bailey's office therein, the trial Judge remarked: "It is not important anyway". The importance of this testimony became evident in the light of the testimony of the appellant later in the trial of the case. (We refrain from going into detail as to the testimony of the appellant for the reason that a new trial may be granted to him.)

We also consider that it was vital to the appellant's defense that he be allowed to show that he was using money received from the bank to purchase looneys for W. J. Bailey, and the trial Judge's refusal to admit such testimony, under the defense here interposed, was error, which was accentuated by his remarks in ruling thereon, and as follows: "I have got to limit this somewhere, and I rule now that all reference to looneys be stricken from the record and neither can that matter be argued to the jury and cannot be referred to. It has nothing to do with the charge of forgery as charged in this indictment, and it can't have anything to do with this case except to bring about confusion, just confuse the issue, and so now that Mr. Simmons got that off his chest, he told you what it was all about, now strike it from the record".

The same observation applies to the appellant's activities in purchasing Government bonds for W. J. Bailey, some of which were purchased, it was testified to, with the proceeds of the forged instruments, and the

refusal of the trial Judge to permit the appellant to go fully into this matter.

We think it unnecessary to refer to the other exceptions. While the fictitious nature of the papers involved is admitted, yet the intent to defraud must be present before a crime is committed.

Of course, it may be that the business was that of Simmons alone, but in view of the peculiar circumstances of this case, greater latitude should have been allowed the appellant in going into the nature of his transactions with W. J. Bailey, and the trial Judge, in my opinion, erred in limiting the appellant in his testimony as he did, and in characterizing some of the proffered testimony as "side issues" and "smoke screens".

For the reasons above stated, and with a majority of the Court concurring, a new trial is granted.

MESSRS. ASSOCIATE JUSTICES TAYLOR and OXNER concur.

MR. ASSOCIATE JUSTICE FISHBURNE (dissenting):

The appellant, H. W. Simmons, was convicted in the court of general sessions of Laurens County upon six indictments charging him with falsely making, forging and uttering certain notes and mortgages, with intent to defraud M. S. Bailey & Son, Bankers, a partnership located at Clinton, South Carolina. Mrs. Elsie Bryson and Mrs. Virginia Brown, his office employees, were jointly indicted with him, but as to them the jury brought in a verdict of not guilty.

Error is assigned because the court refused to quash the indictments on the ground that the tenor of the instruments alleged to have been forged was not set forth, and that the name or names of the person or persons alleged to have been defrauded were not designated therein.

All of the indictments upon which the defendant was tried alleged the forging of certain notes and chattel mortgages,

and are similar in phraseology, except for differences in names and amounts; so that in passing upon this issue it will be necessary to deal only with one of them. The indictment which charged him with forging the name of Gordon Frederick, after setting forth the time and place, continues:

"A note and chattel mortgage and statement of transaction of the tenor as follows, that is to say: the said note and mortgage and transaction to M. S. Bailey & Son, Bankers, a partnership, for and in the amount of Five Hundred Sixty-Four and 96/100 ($564.96) Dollars, and did forge the name of Gordon Frederick to said note and mortgage and statement of transaction, full knowing same to be false, did falsely make, forge and counterfeit, cause and procure to be falsely made, forged and counterfeited, and willingly act and assist in the false making, forging and counterfeiting the same by then and there writing the name of Gordon Fredrick to the said note and mortgage and statement of transaction with intent to defraud, prejudice and damage M. S. Bailey and Son, Bankers, a partnership, against the form of the statute in such case made and provided, and against the peace and dignity of the State."

Appellant contends that the indictment should contain and set out an exact copy of the instrument alleged to be forged so as to fully inform the defendant of the nature of the offense with which he is charged; that to allege its substance only is not sufficient.

Section 1003 of the Code provides:

"Every indictment shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as now required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the same, or so plainly that the nature of the offense charged may be easily understood. *  *  *"

It is provided in Section 1009:

"In all cases whatseoever in which it shall be necessary to make any averment in any indictment as to any instru-

ment, whether the same consists wholly or in part of writing, print or figures, it shall be sufficient to describe such instrument by any name or designations by which the same may be usually known, or by the purport thereof, and in such manner as to sufficiently identify such instrument without setting out any copy or facsimile of the whole or any part thereof."

Upon an examination of the foregoing statutes it will be seen that the indictment as drawn fully complies with the law by describing the instrument of writing by the name or designation by which it is usually known, by giving the purport thereof, and fully identifying it.

Under these circumstances, it is not necessary to set out any copy of the note and mortgage alleged to have been forged.

Nor was it necessary to state the names of the persons composing the partnership of M. S. Bailey & Son, Bankers.

Ordinarily if the indictment charges an intent to defraud a partnership, it is not necessary to state the names of the individuals who are partners. *State v. Franklin,* 115 S. C. 342, 105 S. E. 740; 26 C. J. Sec. 78, Page 936.

It is argued by counsel that the names of the partnership should have been stated because otherwise it would not be possible for appellant to know if the jurors on the panel were related or prejudiced. Prior to the empaneling of the jury, however, it was stated to the court by the solicitor that the banking partnership was composed of W. J. Bailey and the heirs of M. S. Bailey, whose names were given; whereupon the court was requested by appellant's counsel to inquire of each juror if he was related to W. J. Bailey or M. S. Bailey, and that this would be satisfactory to the defendant. It is clear that the appellant suffered no prejudice on this account.

It is next contended that the court erred in permitting R. C. Adair, the cashier of the bank, to testify as to the contents of certain claim and delivery papers over the objec-

tion of defendant that the original papers were the best evidence.

A preliminary statement of the factual situation is necessary to give this question its proper background:

M. S. Bailey & Son, Bankers, is a banking institution and has carried on its business for a long period of years in the town of Clinton. The legal name as used on checks and in business transactions is that of M. S. Bailey & Son, Bankers. H. W. Simmons, the defendant, occupied an office just across the street from the bank which was owned by the estate of M. S. Bailey, on which he was not required to pay rent, and for three or four years had numerous financial transactions with the bank. He was engaged in selling furniture and used cars, and engaged in other matters. During the year 1944, in accordance with his business custom, he assigned numerous notes and mortgages of his customers to the bank, many of which were genuine, and many of which were alleged forgeries. On some of these notes and mortgages he would be given cash; on others he would be given credit on his account. At the time of his arrest, in April, 1945, the bank had reason to believe that more than 150 of these notes and mortgages, aggregating an amount in excess of $100,000.00, were forgeries.

Over a period of several months during 1944, the evidence tends to show, the defendant made weekly payments on these mortgages. In October, 1944, however, they were in default or about to fall due. Notices were thereupon sent by the bank to the purported makers of the various notes and mortgages, and the letters were returned by the Post Office department with the notation that the addresses were unknown. On the trial, after his co-defendants, Mrs. Bryson and Mrs. Brown, had testified that they had, under the personal direction of the defendant, signed the names and probated the signatures of fictitious persons on chattel mortgages covering automobiles which did not exist, he admitted when testifying himself, that the signatures appearing on the notes and mortgages were

forgeries, and confirmed their testimony that he had directed and authorized the same.

Upon being notified by the Post Office department that the notices sent out were unclaimed, the bank had its attorneys to commence claim and delivery proceedings in a further effort to discover the makers of these papers and to subject property covered by them, to wit: automobiles, to the payment of the debts. These papers were placed in the hands of the county sheriff for service.

With reference to the specific question under consideration—that the court erred in permitting R. C. Adair, the cashier, to testify as to the claim and delivery papers, we perceive no error. Sheriff Wier testified to the identical state of facts, and there was no objection interposed to his testimony. And he further stated that when he interviewed the defendant, Simmons, prior to his arrest, with reference to the identity of the parties and the cars described in the papers, Simmons told him that he knew nothing about the cars, nor. where the makers of the notes and mortgages could be found. When on the stand the defendant verified the uselessness of claim and delivery proceedings, when he testified that the names of the parties signing the papers were fictitious and that no such cars as described in the mortgages were in existence.

The appellant complains of various remarks and comments made by the judge during the course of the trial, which he argues strongly tended to indicate to the jury the judge's opinion as to the weight or sufficiency of the evidence—all of which, it is claimed, was highly prejudicial.

It should be stated at this point, not only with reference to this issue, but also as relating to a further contention made by the appellant concerning the exclusion of certain testimony offered by the defense, that the defendant, H. W. Simmons, contended throughout the trial that all of his questionable acts were instigated by and done for the benefit of W. J. Bailey, a partner and manager of M. S. Bailey

& Son, Bankers. He stated that he operated two farms belonging to the bank and the estate of M. S. Bailey. This was admitted. He testified that he bought "looneys" from workmen at the Lydia Mill, the president of which was W. J. Bailey, for the latter's benefit, at a reduced and illegal rate. It was explained that "looneys" are metal tokens issued to employees, contrary to law, in advance of a regular payday in payment of wages, and it was these tokens which the defendant claims that he bought for W. J. Bailey for far less than they were worth, but which were later, upon presentation, accepted and paid for by the mill at face value. And, further, that he bought government bonds from the employees of the Lydia and Clinton Cotton Mills (Bailey was also president of the latter mill), for the account of W. J. Bailey, at a discount; and that he made small loans for him at an illegal rate of interest. He also testified that in the latter part of 1944 he sold a large amount of cloth manufactured at these mills at black market prices for the sole benefit of Mr. Bailey.

Testimony for the defense further tended to show that in order to obtain funds to carry on the various kinds of business which he claimed to conduct for W. J. Bailey, appellant often wrote informal orders on the bank and received therefor cash, and regularly carried a large overdraft. He testified that W. J. Bailey, the manager of the bank, told him that the bank examiner had been objecting to the manner in which the account of H. W. Simmons was being carried in the bank, and that Bailey instructed him to prepare and place in the bank notes and mortgages to take care of cash items and overdrafts, so as to get by the bank examiner. That the several notes and mortgages and statements which he was charged with forging were given to the bank with Bailey's knowledge and consent. He further contended that most of the money received from the forged papers was used to take up cash orders and cover overdrafts incurred in the operation of the business which he conducted, but which he claimed belonged to W. J. Bailey and carried on in the name of H. W. Simmons.

We now come to the specific instances in which it is charged that remarks made by the court during the trial and in his rulings upon evidence, prejudiced the appellant before the jury. When offering in evidence a certain letter from Simmons to Bailey addressed to the latter at Hot Springs, Arkansas, in 1943, which tended to show that appellant had delivered to the cashier of the bank $300.00 for Bailey and the further sum of $613.29, the court remarked, "It is perfectly harmless".

During the testimony of R. C. Adair, he was asked by counsel for appellant if he knew when the appellant and W. J. Bailey had a falling out. The court admitted the evidence and in doing so made the statement, "It is not important anyway".

At another stage of the trial, defense counsel asked Mr. Adair, "How much did you pay Mr. Simmons, your employee?" The witness replied: "I did not pay him anything that I know of", upon which the court remarked: "That is four times the witness has said those same words. There is no use in keeping on repeating the same question; so far as he knows, he did not pay Mr. Simmons anything at all, at least that is what he has testified a number of times".

On another occasion, when the defense was attempting to show the various transactions in detail, which appellant claimed to have carried through for Mr. Bailey in connection with the purchase of government bonds, "looneys", etc., the court commented, "It has nothing to do with the charge of forgery as charged in this indictment, and it can't have anything to do with this case except to bring about confusion, just confuse the issue, and so now that Mr. Simmons got that off his chest, he told you what it was all about, now strike it from the record".

At another point, where appellant was attempting to show by his testimony that the business which he operated belonged to W. J. Bailey, that he was a mere employee, that the account in the bank carried in the name of H. W. Sim-

mons was in truth the account of the businesses operated by him for Bailey in purchasing government bonds, making small loans, and other illegal transactions, the court made the following statement:

"That is all right, you have the right to put up any defense you want, but I am not going to let you be arguing to this jury all these side issues, or about the wood and about the lumber and about buying up government bonds at a low price from these poor mill workers, which would just muddy the water and throw up a smoke screen to becloud the issues in the case. The issue here is the forgery of chattel mortgages and that is the charge against him and these other defendants that will be argued to the jury. This testimony about Mr. Bailey buying up war bonds and selling them at a profit, that is just a smoke screen, and I can't let that be argued to this jury in a case where the charge is forging of chattel mortgages."

In passing upon this alleged error, it must be definitely borne in mind that appellant was charged, not with defrauding W. J. Bailey, but that the forgeries defrauded M. S. Bailey & Son, Bankers, and that all of this testimony which gave rise to the remarks of the trial judge which is complained of, related solely to alleged matters and transactions between appellant and W. J. Bailey. The purpose of the testimony offered was to show that appellant and W. J. Bailey were jointly engaged in illegal acts. Bailey specifically denied that the forged papers were placed in the bank with his knowledge. He testified that he knew nothing about them until the bank discovered that the makers were fictitious, after notices had been sent out.

The cashier of the bank, Mr. R. C. Adair, testified that these notes and chattel mortgages were accepted as genuine, and he knew nothing of their fraudulent character. The testimony further shows that appellant instructed his office employees, Mrs. Bryson and Mrs. Brown, to change and disguise their handwriting when signing the names of fictitious

makers to the notes and chattel mortgages, so that such signatures would appear to have been made by different persons, and would thus go undiscovered.

In our opinion, substantially all of the testimony dealing with the transactions, illegal and otherwise, as between appellant and W. J. Bailey as an individual, was irrelevant. The issue as emphasized by the trial judge time and again, was whether appellant was guilty of the charge of forgery in defrauding M. S. Bailey & Son, Bankers. It is also clear that the admission of such testimony strongly tended to confuse the issue before the jury. As a matter of fact much of it was admitted.

If the issue raised here, dealing with the remarks and comments of the trial judge, had related to the exclusion or admission of competent evidence, we would be strongly inclined to attach more weight to such remarks as being prejudicial. Even under the circumstances shown here, some of the remarks of the court might well have been left unsaid.

The general rule is that remarks made by a circuit judge in the course of a trial upon the admissibility of evidence, or in refusing a motion for a nonsuit or motion to direct a verdict, do not fall within the inhibition of the constitution against charging the jury as to matters of fact. *State v. Deas,* 202 S. C. 9, 23 S. E. (2d) 820, and the earlier cases cited therein. And we have held that remarks made by the trial judge in the course of a trial need not be confined in such narrow limits as to prevent him from stating his reasons for his rulings. *State v. Mishoe,* 198 S. C. 215, 17 S. E. (2d) 142.

But the foregoing rule is always qualified by the statement that remarks and comments by trial judges in ruling upon the admissibility of evidence, constitute reversible error if they are made in such manner or under such circumstances as to impress upon the jury the opinion of the judge as to some vital fact in issue so that he thereby becomes a participant in the decision of such fact to the prejudice of the defendant. *State v. Robinson,* 91 S. C. 161, 74 S. E. 363.

In applying the foregoing rule, it was held in *Autrey v. Bell,* 114 S. C. 370, 103 S. E. 749, that remarks of the court on objection to counsel's leading the witnesses on redirect examination: "That is superfluous; this witness has covered it in a most clear way; what is the use of reiterating it?" were held not to be so prejudicial to the defendant as to warrant the reversal of the judgment for the plaintiff.

In *State v. Matthews,* 126 S. C. 195, 118 S. E. 922, the trial court by way of comment upon the incompetency of testimony relative to the defendant's having a wife and two daughters, remarked: "What has that got to do with this case? It is irregular evidence, and out of order. The man is being tried for a liquor charge. The questiton is perfectly out of order and is to create sympathy in the minds of the jury. The question is absolutely out of order and ruled out".

It was held by a majority of the court that the ruling of the circuit judge was correct, and that, while his comment was improper, he but stated an obvious opinion which could not reasonably have prejudiced the defendant. Two members of the court in a concurring opinion did not approve the unqualified declaration of the leading opinion that nothing that the circuit judge may say in passing upon the admissibility of testimony can be urged as prejudicial error, and this view has been upheld in many succeeding cases as hereinabove shown.

Whether the error in a given case shall be regarded as harmless on appeal may often depend upon the circumstances of the particular case, rather than on any definite rules of law; the materiality and prejudicial character of the alleged error being determined in its relation to the entire case.

Accordingly, appellate courts are disposed to regard as harmless, intervening errors, where it appears from the record that the conviction is clearly correct on the merits; that the accused had a fair trial; and where any other verdict could not reasonably have been returned on the evidence. *State v. Gilstrap,* 205 S. C. 412, 32 S. E. (2d) 163; *State v. Evans,* 202 S. C. 463, 25 S. E. (2d) 492.

It is incumbent on the appellant to satisfy this court that there has been prejudicial error, *State v. McPhail,* 115 S. C. 333, 105 S. E. 638, and this he has failed to do.

A close inspection of the entire record strongly disposes us to the view that the accused was not prejudicially affected by the remarks of the trial judge. In this case appellant freely admitted the acts of forgery, and although the intent to defraud was denied, it clearly appeared from the evidence that M. S. Bailey & Son, Bankers, had been defrauded by the acts of the defendant.

Error is assigned because the trial court erred in refusing to admit certain checks and other evidence tending to show that the money derived from the forged instruments was used to purchase mules, corn, fertilizer, and for other expenses incurred on the farms belonging to the bank and to its manager, W. J. Bailey. Appellant seems to be under some misapprehension as to these checks with reference to the farms in question. Testimony was admitted as to several of these checks, which, however, would total only a negligible amount compared to the approximate sum of $100,000.00 claimed to have been obtained through the forgeries. In arguing for the admission of some of these checks which were excluded, appellant contended that they were relevant because Simmons was an employee of W. J. Bailey and not of M. S. Bailey & Son, Bankers. In our opinion their exclusion was not prejudicial.

Neither did the trial judge commit error in refusing to admit in evidence receipts and affidavits of the OPA investigators concerning black market cloth transactions carried on by the defendant for the alleged sole benefit of W. J. Bailey, which the latter denied. It is not contended that these transactions in any way concerned the banking partnership of M. S. Bailey & Son, but involved only W. J. Bailey as an individual.

It likewise follows that the trial court committed no error in refusing appellant's motion for a new trial based on the same grounds contained in his exceptions on appeal.

The judgment should be affirmed.

Mr. Associate Justice Stukes concurs.