## 23209

The STATE, Respondent v. Stacy FORD, Appellant.
(392 S.E. (2d) 781)

Supreme Court

*Deputy Chief Atty. Elizabeth C. Fullwood* and *Asst. Appellate Defender Frank Draper, S. C. Office of Appellate Defense*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr., Staff Atty. Miller W. Shealy, Jr.*, Columbia, and *Sol. James O. Dunn*, Conway, *for respondent.*

Heard Oct. 14, 1989.

Decided May 7, 1990.

TOAL, Justice:

This case presents the novel issue of whether a new scientific technique, DNA Print Identification or Restriction Fragment Link Polymorphism (RFLP) is admissible into evidence in a judicial proceeding in South Carolina.[1]

Stacy Ford appeals his conviction of conspiracy, kidnapping and criminal sexual conduct in the first degree. We affirm.

In the early morning hours on November 1, 1987, the victim rode home from a Georgetown County nightclub with Ford's codefendant Archie Fraser. After they had driven approximately one-half mile, a man rose out of the back seat. He was wearing a rubber Halloween mask over his head. He pointed a gun at the victim and told Fraser to drive or he would kill the victim. The man in the back seat instructed Fraser to drive up a little dirt road off of the highway into an isolated area. The man forced Fraser to have intercourse with the victim at gunpoint. He then had the victim perform fellatio upon him and had intercourse with her.

When they got back in the car, the man instructed Fraser to drive him back to the nightclub and let him out in a dark area a short distance past the nightclub. He told the victim not to turn around and look at him or he would shoot her. The man took off the mask as he was getting out of the car and the victim got a brief glimpse of his face. She was unable, however, to identify Ford as the assailant.

*DNA Analysis*
Three vials of blood, a vaginal swab and a clothing patch

---

[1] Prior to oral argument, Ford moved pursuant to Supreme Court Rule 24, for leave to move for a new trial based upon after discovered evidence. The motion is denied for the reasons discussed herein.

from the victim's underwear were sent to Lifecodes Corporation for DNA (deoxyribonucleic acid) analysis. The results of the tests performed revealed that the DNA extracted from the sperm found on the clothing patch and vaginal swab matched the DNA found in Ford's blood sample.

Lifecodes Corporation is a biotechnology corporation that deals in the analysis of DNA samples. Located in Valhalla, New York, Lifecodes is one of three commercial laboratories in the United States which analyzes DNA for identification purposes.

DNA is essentially the genetic material that makes up chromosomes in a person's cells. The DNA present within each cell in a person's body is identical. Therefore, the DNA found in a man's blood is identical to the DNA found in his sperm. DNA is organized in structures called chromosomes and appears in form like a spiral staircase or ladder. The rungs on the ladder or base pairs are the informational contents that are present within the DNA molecule. The base pairs are identified by letters—C, G, A and T. Each letter stands for a chemical. There is a pairing combination such that G always pairs with C and A always pairs with T.

Lifecodes performs a DNA print test which is sometimes referred to as "DNA fingerprinting." Restriction fragment length polymorphism (RFLP) analysis is used in this testing procedure. Briefly, RFLP analysis involves the following steps. DNA is extracted from samples, such as blood. A restriction enzyme is used to cut the DNA into fragments. The fragments are placed in a gel to which an electrical current is applied. This process, known as electrophoresis, causes the larger pieces to remain at the top and the smaller pieces to move to the bottom. The DNA fragments are chemically split into single strands and then transferred to a filter paper. The paper is stained which allows a person to visualize the DNA on the paper. Genetic probes are applied to each independent genetic system in a process called hybridization. This process discriminates the DNA so the analyst can tell whether this DNA is different from other types of DNA. Finally, an x-ray picture of the DNA is produced so that the DNA banding patterns and their lengths can be visualized. The genetic systems in the DNA samples are them compared. For a more detailed discussion of DNA

analysis, see *Spencer v. Commonwealth*, 238 Va. 275, 384 S.E. (2d) 775 (1989) *cert. denied,* — U.S. —, 110 S. Ct. 759, 107 L. Ed. (2d) 775 (1990); *People v. Wesley*, 140 Misc. (2d) 306, 533 N.Y.S. (2d) 643 (1988); Thompson & Ford, "DNA Typing: Acceptance & Weight of the New Genetic Identification Tests," 75 Va. L. Rev. 45 (1989).

As noted above, the test results in this case revealed that the genetic systems in Ford's DNA from his blood sample matched the genetic systems in the DNA extracted from the sperm which was found on the vaginal swab and clothing patch. Testimony was presented that the combination of DNA fragments found in Ford's DNA would only occur in one out of 23 million North American blacks.

Ford contends that the RFLP analysis has not been generally accepted as reliable in the scientific community in accordance with *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923), and, therefore, testimony derived from the analysis should have been excluded. We disagree.

Under the *Frye* test, admissibility of scientific evidence is dependent upon a showing that the reliability of the techniques and theories have gained a general acceptance in the scientific community. South Carolina, however, has never specifically adopted the *Frye* test and has employed a less restrictive standard in regard to the admissibility of scientific evidence. In *State v. Jones*, 273 S.C. 723, 259 S.E. (2d) 120 (1979), this Court found that the admissibility of "bite mark" testimony was dependent upon " '. . . the degree to which the trier of fact must accept, on faith, scientific hypotheses not capable of proof or disproof in court and not even generally accepted outside the courtroom.' " 259 S.E. (2d) at 124 citing *People v. Marx*, 54 Cal. App. (3d) 100, 126 Cal. Rptr. 350 (1975). The Court further noted that the experts did not rely on untested methods, unproven hypotheses, intuition or revelation, but rather applied scientifically and professionally established techniques to the solution of a particular problem.

Here, the undisputed evidence presented at trial indicated the DNA print test has been documented in numerous journals and that the applicability of this test to blood and sperm samples has been demonstrated. It was established that while only two other companies currently analyze DNA for identification purposes, thousands of universities utilize

the same procedure for disease detection. Furthermore, testimony was presented that a quality control program is utilized by Lifecodes to ensure the reliability of the procedure and that the tests conducted in this case were done in a manner that is consistent with the laws of genetics and the procedures and protocol established at Lifecodes. None of this evidence was contradicted by the defense.

Furthermore, Ford concedes that individual techniques such as DNA extraction or electrophoresis may have gained general scientific acceptance. He maintains, however, that the process as a whole has not been found to be reliable and accepted in the scientific community. Other jurisdictions addressing this specific issue have ruled to the contrary. *State v. Schwartz*, 447 N.W. (2d) 422 (Minn. 1989); *People v. Shi Fu Huang*, 145 Misc. (2d) 513, 546 N.Y.S. (2d) 920 (1989); *Spencer v. Commonwealth*, 238 Va. 275, 384 S.E. (2d) 775 (1989) (Spencer I), *cert. denied*, — U.S. —, 110 S. Ct. 759, 107 L. Ed. (2d) 775 (1990); *Spencer v. Commonwealth*, 238 Va. 295, 384 S.E. (2d) 785 (1989) (Spencer II), *cert. denied*, — U.S. —, 110 S. Ct. 1171, 107 L. Ed. (2d) 1073 (1990); *State v. Woodall*, 385 S.E. (2d) 253 (W. Va. 1989); *People v. Wesley*, 140 Misc. (2d) 306, 533 N.Y.S. (2d) 643 (1988); *Andrews v. State*, 533 So. (2d) 841 (Fla. 5th Dist. Ct. App. 1988). *See generally*, Thompson & Ford, "DNA Typing: Acceptance and Weight of the New Genetic Identification Tests," 75 Va. L. Rev. 45 (1989).

We recognize that the use of DNA analysis in forensic settings is a recent development. This type of analysis has been utilized for a number of years in diagnostic settings. Because the focus is different than in diagnostic settings, problems may exist that are unique to forensic DNA tests. For example, in forensic DNA testing, there is a higher probability that the sample may be contaminated by bacteria. Such problems, however, concern the reliability of the particular tests performed in a particular case. The reliability of the particular test in a specific case may always be challenged as discussed below. This does not mean that all forensic DNA tests are unreliable. To the contrary, we are convinced that forensic DNA testing may be accomplished with the same techniques used in diagnostic settings.

Therefore, we find that DNA print testing and the process of RFLP analysis have been recognized as reliable and have gained general acceptance in the scientific community. In addition, the evidence indicated that RFLP analysis involves scientifically and professionally established techniques rather than untested methods or unproven hypotheses. Thus, the RFLP analysis and test results would be admissible under both the *Frye* standard and the standard set forth in *State v. Jones, supra.*

Having found that RFLP analysis involves scientific techniques which have been generally accepted by the professional community, the initial test for admissibility has been met. In future cases, a *Frye* type hearing will not be necessary. This initial burden has been established and DNA analysis may be admitted in judicial proceedings in this state in the same manner as other scientific evidence which is routinely used in trial court proceedings such as fingerprint analysis and ABO blood tests.

This, however, does not mean that DNA test results should always be admitted into evidence. The admissibility of any such evidence remains subject to attack. Issues pertaining to relevancy or prejudice may be raised. For example, expert testimony may be presented to impeach the particular procedures used in a specific test or the reliability of the results obtained. *See e.g. People v. Castro,* 144 Misc. (2d) 956 545 N.Y.S. (2d) 985 (1989). In addition, traditional challenges to the admissibility of evidence such as the contamination of the sample or chain of custody questions may be presented. These issues relate to the weight of the evidence. The evidence may be found to be so tainted that it is totally unreliable and, therefore, must be excluded.

The defense may challenge the admissibility of the evidence through the use of various procedural methods such as a motion to suppress or a motion in limine or the evidence may be challenged during trial. How the issue is handled, however, remains within the discretion of the trial judge.

In the case at bar, none of the issues described above were raised by the defendant. Therefore, we conclude that the DNA analysis and results were properly admitted in this case.

*Motion For Leave to Move For New Trial on After-Discovered Evidence*

We also find that Ford's motion for leave to move for a new trial based upon after discovered evidence must be denied. Ford's motion was based on the ground that DNA identification procedures utilized by Lifecodes and introduced at trial were substantially discredited in *People v. Castro,* 144 Misc. (2d) 956, 545 N.Y.S. (2d) 985 (1989).

In *Castro,* a twelve week *Frye* hearing was held concerning the admissibility of DNA identification tests and the methods employed by Lifecodes. The court held that DNA forensic testing can produce reliable results and that there are techniques and experiments currently in existence which are capable of producing reliable results which are generally accepted in the scientific community. The court found, however, that Lifecodes did not perform the accepted scientific techniques in analyzing the forensic samples in *that particular case.*

In order to obtain leave from this Court to move for a new trial based on after-discovered evidence, an appellant must make a *prima facie* showing that a new trial is warranted. *State v. Butler,* 261 S.C. 355, 200 S.E. (2d) 70 (1973); *State v. Jennings,* 40 S.C. 553, 18 S.E. 932 (1894). The requirements for a new trial are: (1) the evidence is such as will probably change the result if a new trial is granted, (2) the evidence has been discovered since the trial, (3) the evidence could not have been discovered prior to trial by the exercise of due diligence, (4) the evidence is material to the issue, and (5) the evidence is not merely cumulative or impeaching. *Hayden v. State,* 278 S.C. 610, 299 S.E. (2d) 854 (1983); *State v. Allen,* 276 S.C. 412, 279 S.E. (2d) 365 (1981).

It is the opinion of this Court that Ford has failed to establish the requisite elements warranting a new trial. We find that the *Castro* decision does not constitute newly discovered evidence. The *Castro* court specifically found that reliable results may be produced by DNA forensic testing and that such techniques are generally accepted in the scientific community. Some of the DNA evidence was excluded because of the unreliability of the particular tests performed in that specific case. Therefore, the *Castro* decision is consistent with the opinion we set forth

today and does not affect the reliability of the evidence introduced in this specific case.

The defense in this case could have challenged the reliability of the specific tests performed as did the defendant in *Castro*. Therefore, Ford has failed to show that this "evidence" could not have been discovered by the exercise of due diligence.

Furthermore, the DNA results were cumulative to other evidence introduced to prove that Ford committed the crime. Testimony was presented by a SLED forensic serologist concerning the ABO blood type and secretor analysis of samples of blood and body fluids. The results indicated that the perpetrator was a group O secretor which matches Ford's blood type. In addition, circumstantial evidence was presented connecting Ford with the crime. When Ford's codefendant took the victim to the police station, he gave a wallet to another young man who had ridden with them. The wallet contained identification bearing Ford's name. Another witness testified that he heard Ford and his codefendant conspiring to commit the crime at the nightclub. Therefore, the DNA results are merely cumulative to other evidence presented and as such if a new trial was had, the result would probably not change. Thus, we conclude that Ford failed to establish the requirements for a new trial and accordingly deny his motion.

*Qualification of Expert*

Ford contends that John Coleman should not have been allowed to give opinion testimony concerning the results of tests he conducted because he was not qualified as an expert witness. We disagree.

John Coleman, the forensic laboratory technician for Lifecodes, who conducted the tests in this case, testified regarding the analysis used and the results obtained. When he began making comparisons from his test results, defense counsel objected first on grounds relating to the tests' scientific validity and, second, on the grounds that Coleman had not been qualified as an expert. The Solicitor asked that Coleman be qualified as an expert in forensic laboratory testing. Defense counsel requested a bench conference which was held out of the hearing of the jury.

The Solicitor resumed the direct examination. On cross-examination, defense counsel questioned Coleman about his qualifications. Defense counsel never objected after Coleman was offered as an expert. The record indicates that Coleman was qualified as an expert in forensic laboratory testing without objection and, therefore, was properly allowed to testify as to the results of tests he conducted.

We have reviewed Ford's remaining exceptions and affirm them pursuant to Supreme Court Rule 23 based upon the following authorities: *Baker v. Port City Steel Erectors, Inc.,* 261 S.C. 469, 200 S.E. (2d) 681 (1973) (alleged hearsay); *State v. Lynn,* 277 S.C. 222, 284 S.E. (2d) 786 (1981) (prior inconsistent statement). For the reasons discussed above, the lower court is affirmed and the motion for leave to request a new trial based on after-discovered evidence is denied.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.