24277

The STATE, Respondent v. Albert Alexander DINKINS, Appellant.

(462 S.E. (2d) 59)

Supreme Court

</div>

*Chief Atty. Daniel T. Stacey* of *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Deputy Atty. Gen. William K. Moore,* Columbia; and *Sol. Wade S. Kolb, Jr.,* Sumter, *for respondent.*

Heard Oct. 5, 1994.

Decided July 24, 1995.

MOORE, Justice:

Appellant was convicted of first-degree criminal sexual conduct, first-degree burglary, and armed robbery and received consecutive sentences of thirty years, life, and ten years, respectively. He appeals the admission of population frequency statistics for deoxyribonucleic acid (DNA) test results. We affirm.

## FACTS

The victim, a seventy-eight-year-old woman, was sexually assaulted in her bedroom. She was unable to identify her attacker because he had worn a "protective covering" over his face. However, she described a medallion worn by her attacker which was similar to one owned by appellant and she identified her attacker as having "black speech." Appellant ·is black. Police were unable to identify appellant from a partial fingerprint lifted from a window screen.

South Carolina Law Enforcement Division (SLED) performed DNA analysis on semon samples taken from the bed sheets. The DNA test showed a match with appellant's DNA. Sled DNA expert Steve Lambert testified the probability of

finding appellant's particular DNA pattern in an unrelated individual selected randomly in South Carolina is one in 2.9 billion in the black population and one in 4.2 billion in the white population.

After an *in camera* hearing, the trial judge ruled the statistical evidence admissible.

## ISSUE

Did the trial judge err in admitting the DNA population frequency statistics?

## DISCUSSION

DNA is the long, double-strand molecule found in the chromosomes carried in cell nuclei.[1] DNA contains the genetic blueprint for all living organisms. It is well accepted that, except for identical twins, each individual has a unique genetic code or DNA print. A process known as autoradiography yields an x-ray showing autorads or bands of DNA. A DNA match occurs when the three to five autorads which are examined are determined to be alike. A match means the person tested is a potential contributor of the sample DNA print.

After determining a match, its statistical significance is ascertained. Forensic DNA laboratories have developed databases which establish the frequency with which a particular autorad appears in the relevant population. The relevant population is determined according to the race of the DNA contributor. The product rule is then used to determine the frequency with which the entire DNA print occurs in the relevant population. Under the product rule, each autorad's frequency in a print is multiplied together resulting in the total probability that the tested DNA sample print randomly would appear in the relevant population.[2] *See* Wedlock, "DNA Goes Round and Round," *South Carolina Lawyer*, March/April 1993. Most of the controversy surrounding DNA population frequency statistics involves the product rule.

---

[1] *See State v. Ford*, 301 S.C. 485, 392 S.E. (2d) 781 (1990) (discussion of DNA).

[2] For example, if one autorad is found in fifty percent of the relevant population and another autorad is found in ten percent of the relevant population, applying the product rule, the probability of a coincidental match of two DNA prints is 5% or .10 x .50.

We first address the admissibility of the statistics under Rule 24(a), *SCRCrimP*, which is identical to Rule 702, *Federal Rules of Evidence*. Both provide: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."[3]

"[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, — U.S. at —, 113 S.Ct. at 2798. In this case, the DNA population frequency statistics assist the jury in determining whether appellant was the attacker. The jury should be allowed to make its own determination as to whether it believes the statistics are reliable. The jury is free to believe or disbelieve the experts and the statistics. Therefore, we hold DNA population frequency statistics are admissible. However, as with DNA test results, they are subject to attack for relevancy and prejudice. *Ford, supra.*

Here, appellant contends the trial judge erred in admitting the probability statistics testimony because its prejudicial effect outweighs its probative value under *State v. Alexander*, 303 S.C. 377, 401 S.E. (2d) 146 (1991). Appellant argues the astronomical probability figure of one in 2.9 billion unfairly prejudiced him because the jury may have perceived this statistic as infallible. This potential prejudice, however, does not mandate exclusion. Appellant did not cross-examine Lambert nor present his own experts to show why the statistics are unreliable or flawed.[4] Therefore, we find the trial judge did not err in finding the probative value of the evidence outweighed any unfair prejudicial effect. In conclusion,

---

[3] In *Ford, supra*, we held DNA test results admissible under *States v. Jones*, 273 S.C. 723, 259 S.E. (2d) 120 (1979), and *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923), subject to attack for relevancy or prejudice. We did not specifically address the admissibility of population statistics. *Ford* and *Jones* were decided prior to the effective date of *SCRCrimP* Rule 24. Further, the United States Supreme Court recently held the adoption of the *Federal Rules of Evidence* superseded the *Frye* test. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, — U.S. —, 113 S.Ct. 2786, 125 L.Ed. (2d) 469 (1993).

[4] For instance, in this case, Lambert testified he used databases developed by SLED in calculating the frequency statistics. SLED developed these data-

we hold the trial judge did not abuse his discretion in admitting the DNA statistics.

Affirmed.

CHANDLER, C.J., and TOAL and WALLER, JJ., concur.

FINNEY, J., concurs in separate opinion.

FINNEY, Justice, concurring:

I respectfully concur. As the majority opinion points out, appellant simply challenged the expert's statistical conclusion on the ground its prejudicial impact outweighed its probative value, but neither cross-examined the expert nor presented one of his own to challenge the methodology or reliability of the evidence. With the understanding that we decide only that DNA population frequency statistics *may* be admissible in a criminal trial, I concur.

bases based on DNA of only two hundred fifty blacks in South Carolina. Many experts contend databases need to be taken from a much larger sample, such as two to three thousand. *See e.g. State v. Futrell,* 112 N.C. App. 651, 436 S.E. (2d) 884 (1993).