2513

The STATE, Respondent v. Mitcheal Jack HYMAN, Appellant.

(471 S.E. (2d) 466)

Court of Appeals

*Assistant Appellate Defender Robert M. Pachak,* of *SC Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Chief Deputy Attorney General Donald J. Zelenka,* and *Deputy Attorney General Salley W. Elliott,* all of Columbia; and *Solicitor David P. Schwacke,* North Charleston, *for respondent.*

Heard Apr. 2, 1996.

Decided May 20, 1996.

HOWELL, Chief Judge:

Mitcheal Jack Hyman was convicted of first-degree criminal sexual conduct and sentenced to 23 years. Hyman appeals. We affirm.

The alleged victim testified she worked as a bartender at Pappy's. She knew Hyman as a customer. After she finished working the night in question, August 28, 1992, Hyman asked her if she wanted to leave to smoke marijuana with him. They left Pappy's in her car and went to a boat landing where they left the car, smoked marijuana, and drank beer. The victim testified Hyman attacked her when they got back in the car. She stated he punched and choked her, and forced her to have oral and vaginal sex. As they drove back to the bar, Hyman stated he had never done anything like that before and asked her to forgive him. He also threatened to harm her and her family if she told anyone about the incident. The victim returned to the bar and the police were called. The victim was transported to the hospital for examination.

Hyman testified he and the victim met at the bar on August 27, 1992 when the victim attempted to buy marijuana from him. Hyman left the bar and returned the following night with

marijuana. After the victim finished working, Hyman accompanied her to the boat ramp to smoke marijuana. He denied having sex with her or assaulting her.

Two witnesses testified they saw Hyman and the victim leave Pappy's together. The victim returned approximately an hour and a half later. She was crying, her clothes were disheveled, she had scratches on her face, arms, and legs, and her nose was bleeding. She stated she had been attacked.

A SLED agent assigned to the DNA Analysis Department testified as an expert in the field of DNA forensic analysis. He stated the semen found on the victim's blouse generated a DNA profile that matched the DNA profile he developed from Hyman's blood sample. He further testified that this particular DNA profile would be found among the male Caucasian population selected at random from the state in approximately one out of every 6,700 individuals. When questioned on direct about stating the results in other terms, he testified:

> You can look at it in terms of the percent of the population of South Carolina, the male population. Since we are talking about a semen sample it could only be contributed by a male. Another way of saying that one in 6700 [is] that it eliminates 99.85 percent of the male semen producing population at random in South Carolina. That is 99.85 percent . . . could not have contributed that sample.

Defense counsel asked the trial court judge to give a requested charge on DNA tests. The requested charge stated:

> You have heard testimony in this case concerning the results of DNA tests that were done on certain evidence. The results of these tests have been expressed in mathematical ratios and/or percentages. These mathematical ratios [and]/or percentages relate only to that specific evidence and should not be used by you as a mathematical and/or statistical ratio or percentage of whether the Defendant is guilty or not guilty, whether you accept or reject the DNA testimony. This evidence relates only to the specific piece of evidence tested, for it is up to you, Ladies and Gentlemen, and, you only, to determine whether the Defendant is guilty or not guilty.

The trial judge refused to give the charge because the judge

felt it would be an improper comment on the facts. The trial judge charged the jury on expert witnesses and their opinions.

Hyman argues the trial judge erred in refusing to give the limiting charge. Hyman alleges the use of DNA statistics without a limiting charge impermissibly suggests to the jury that the probability of defendant's guilt is equivalent to the DNA statistic, here, 99.85 percent. The supreme court has recognized DNA testing as an accepted scientific procedure and permitted the introduction of the results of such testing. *State v. Ford*, 301 S.C. 485, 392 S.E. (2d) 781 (1990). *See also State v. McFadden*, 318 S.C. 404, 458 S.E. (2d) 61 (Ct. App. 1995); *State v. China*, 312 S.C. 335, 440 S.E. (2d) 382 (Ct. App. 1993). The supreme court also held DNA population frequency statistics are admissible. *State v. Dinkins*, 319 S.C. 415, 462 S.E. (2d) 59 (1995). Hyman had the opportunity to cross-examine the SLED agent about the testing procedures, the possibility of improper procedures, the size of the test group, and other factors affecting the reliability of the testing. Hyman also could have introduced his own expert witnesses. Defense counsel could have cautioned the jury during closing arguments not to consider the 99.85 percent statistic as the probability of Hyman's guilt. It would, however, be error for the trial judge to comment on the DNA statistics, as requested by Hyman.

Our constitution prohibits a trial judge from charging the jury on the facts. *See* S.C. Const. art. V, § 21 ("Judges shall not charge juries in respect to matters of fact, but shall declare the law."); *State v. Simmons*, 209 S.C. 531, 41 S.E. (2d) 217 (1947) (A judge cannot intimate in his charge any opinion as to the facts at issue). We conclude the requested charge constitutes an impermissible comment on the DNA evidence. DNA may be admitted as any other scientific evidence, subject to relevancy, prejudice, and other challenges to the admissibility. *Ford*, 301 S.C. at 490, 392 S.E. (2d) at 783-84; *China*, 312 S.C.at 340-42, 440 S.E. (2d) at 385. Once the DNA evidence was properly admitted, the trial judge was not required to give a limiting charge. When the State qualified their first expert witness, the trial judge instructed:

Ladies and gentlemen, normally, a person cannot give opinion testimony. Normally, when a person testifies they

must testify as to what they either saw, heard, or sensed by smell, or something of that nature. However, there is an exception when someone is qualified because of education or experience. They are permitted to give their opinion in certain areas if the Court qualifies them that way. This witness will be qualified in the area that the State mentioned to give opinion testimony in that area. That does not mean that you must accept the opinion, but it is evidence for you to utilize in any way you see fit.

During the jury charge at the close of all evidence, the trial judge instructed the jury:

Ladies and gentlemen, you should consider expert opinion received in evidence in this case and give it such weight as you may feel it deserves. If you should decide an opinion of an expert is not based upon sufficient education and experience or if you should conclude that the reasons given in support of the opinion are not sound or you feel it is outweighed by other evidence you may disregard the opinion entirely. Once again, you give the testimony of experts any weight, if any, that you feel it should receive.

Upon review on appeal, the jury instructions must be considered in their entirety. *Roberts v. Hunter*, 310 S.C. 364, 426 S.E. (2d) 797 (1993). After a review of the record and the accompanying jury charge, we conclude the trial judge adequately instructed the law applicable to the DNA evidence. The jury should be free to make its own determination about the reliability of the DNA statistics. *Dinkins*, 319 S.C. at 416, 462 S.E. (2d) at 60 (1995). Accordingly, Hyman's conviction is

Affirmed.

CONNOR and HEARN, JJ., concur.