**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Arsenio D. Colclough, Appellant.

Appellate Case No. 2016-000724

Appeal From Sumter County
W. Jeffrey Young, Circuit Court Judge

Unpublished Opinion No. 2020-UP-182
Submitted March 2, 2020 – Filed June 10, 2020

**AFFIRMED**

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald Zelenka, Senior Assistant Deputy Attorney General Melody Brown, Assistant Attorney General Sherrie Butterbaugh, all of Columbia, and Third Circuit Solicitor Ernest Finney, of Sumter, for Respondent.

**PER CURIAM:** Arsenio D. Colclough (Defendant) appeals his convictions for two counts of murder and two counts of possession of a weapon during the commission of a violent crime, contending the trial court erred by admitting DNA evidence from a hat found at the crime scene. We affirm, finding no error.

## I.

Before trial, Defendant made a motion to suppress DNA evidence collected from a red baseball hat found at the crime scene. The red hat was photographed by police at the scene—victim Rayshawn Sherrod Holmes's (Holmes's) house—but was not taken into evidence. Janice Denise Chatman (Janice), Holmes's mother, later cleaned up the house and took the hats she found to her house to save them for Holmes's son. At the hearing, the State presented evidence Defendant could not be excluded as a minor contributor to the DNA profile obtained from the red hat. The State explained its DNA expert would testify the likelihood the minor contributor was someone other than Defendant was one in sixteen. Defendant clarified he was not challenging the chain of custody concerning the red hat but maintained he was objecting to "any DNA evidence testimony regarding" it. When the trial court expressed concern about the red hat's possible contamination, the State called Janice to testify at the pre-trial hearing.

Janice testified she discovered Holmes's and the second victim's bodies the night they were shot and killed. She testified she later took the red hat and stored it on a hat rack in Holmes's childhood bedroom at her house. She further stated that, after law enforcement mentioned a red baseball hat to her about seven months after the murders, she recalled removing a red hat from Holmes's house. She notified law enforcement, and Detective Wesley Gardner retrieved the red hat from her house. Janice testified no one else had touched the red hat between the time she took possession of it and when she turned it over to Detective Gardner. Janice testified no one in her family was related to Defendant, and he had not been to her house since before Holmes died. Janice stated Holmes's bedroom was "very secure," and although it was unlocked, no one but her, Holmes's father, and Holmes's four-year-old son had access to the room. She noted the only visitors to her house during the seven months the red hat was in her possession were her daughters, Holmes's father, Holmes's son and girlfriend, and her nephews. Janice maintained that none of those individuals would have had access to Holmes's bedroom due to its proximity to her bedroom and her policy of not letting people down the hallway.

Catherine Leisy, a forensic scientist for the South Carolina Law Enforcement Division (SLED), testified one of the DNA profiles developed from the scrapings of

the red hat matched Holmes's DNA profile. She further stated she could not exclude Defendant as a minor contributor to the DNA mixture, and the probability of randomly selecting an unrelated individual who could have contributed to the hat's DNA mixture was approximately one in sixteen.

The State argued testimony at trial would establish (1) the red hat was found in a pool of Holmes's blood, which would explain how Holmes's DNA got on the red hat, and (2) Defendant told someone he was worried he left his hat at the murder scene.

Janice's testimony at trial was substantially the same as her pre-trial testimony; however, during her testimony in front of the jury, the State also moved to admit photographs of the murder scene at Holmes's house. The trial court admitted them without objection. Janice identified the red hat in one of the photos. On cross-examination, Janice testified she did not give the red hat to Detective Gardner until seven months after the crimes occurred, but Defendant could not have had access to Holmes's bedroom during that time.

Corie Simon, an inmate who was in jail with Defendant on an unrelated charge, testified Defendant told him "somebody's cousin['s] hat was left at [Holmes's house,] and [the police] tried to frame him for it [even though] he said he was . . . [not at] the crime scene." Simon stated Defendant denied knowing anything about the hat. When asked what he told Detective Gardner about Defendant, Simon stated he had not told Detective Gardner anything. The State introduced a statement signed by Simon that did not mention the red hat; however, Simon denied he made a statement to police and maintained it was not his signature on the statement.

In the afternoon of the first day of the trial, the trial court revisited issues surrounding admission of the red hat. The State asserted Leisy's testimony "would now be admissible and relevant due to the fact, among other things, that Simon testified [Defendant] told him he did [not] know anything about a hat." Defendant stated, "[Y]ou heard my arguments yesterday[,] and they would be the same today," and stated "the one out of sixteen" probability "combined with the fact that there [were] seven months that [the red hat] was out of custody of law enforcement . . . would make it, on balance of [Rule] 403[, SCRE] more prejudicial than it would be probative and potentially confuse the jury." The trial court stated, "I think I am going to allow it. There was some testimony that [Defendant] said the hat wasn't his. And it is . . . an area that's going to be ripe for you on cross[-]examination, but I think that [the State has] enough to allow it in[,] and the jury can do with it what it wants to. So I'm going to overrule your objection."

The State next called Courtney Thompson, a SLED forensic serologist, who testified she processed the red hat for ownership and for blood. When the State moved to admit the red hat into evidence, Defendant objected, referencing his previous objections to the red hat. The trial court overruled Defendant's objection. Thompson recalled when she swabbed the red hat, she found an area on the headband that tested positive for blood; she stated she cut out that area and sent it for DNA analysis.

Leisy, who was qualified as an expert in forensic DNA identification without objection, testified the DNA profile developed from the hat matched the DNA profile of Holmes; she stated the probability of randomly selecting an unrelated individual who could have contributed to the DNA profile that matched the cutting was approximately one in three hundred twenty quadrillion. According to Leisy, the DNA profile developed from the scraping was a mixture of at least three individuals. She explained the major contributor of the DNA was Holmes. Leisy also testified Defendant could not be excluded as a minor contributor to the DNA profile from the scrapings; she stated, however, the probability of randomly selecting an unrelated individual as the minor contributor to the DNA profile was approximately one in sixteen. She noted the odds assumed all sixteen persons had the same opportunity to contribute. Leisy acknowledged Defendant was excluded on the other sample she tested. The trial court admitted Leisy's written report without objection. Defendant did not object during any point of the State's direct examination of Leisy.

The jury found Defendant guilty on all counts, and the trial court sentenced him to life imprisonment. This appeal followed.

## II.

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "This [c]ourt is bound by the trial court's factual findings unless they are clearly erroneous." *Id*. "The admission or exclusion of evidence is left to the sound discretion of the trial [court], whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pittman*, 373 S.C. 527, 577, 647 S.E.2d 144, 170 (2007).

## III.

Defendant argues the trial court erred by admitting the red hat into evidence because the manner in which the red hat was collected and stored created a substantial risk

of contamination that rendered the DNA evidence unreliable. Defendant further contends Leisy's testimony regarding the probability the DNA "matched" Defendant's DNA was likely to confuse the jury under Rule 403, SCRE.

The admissibility of DNA test results is subject to attack based on grounds such as relevancy or unfair prejudice. *State v. Ford*, 301 S.C. 485, 490, 392 S.E.2d 781, 784 (1990). As our supreme court has noted:

> [T]raditional challenges to the admissibility of evidence such as the contamination of the sample or chain of custody questions may be presented. These issues relate to the weight of the evidence. The evidence may be found to be so tainted that it is totally unreliable and, therefore, must be excluded.

*Id.*

In *State v. Ramsey*, the court found the DNA evidence was "not so tainted that it [was] totally unreliable." 345 S.C. 607, 615, 550 S.E.2d 294, 298 (2001). There, the State sought to admit DNA evidence processed from material found on the bottom of a bloody boot that was in the defendant's trailer and was similar to the sole pattern of a cast of a footprint taken from the crime scene. *Id.* at 611, 550 S.E.2d at 296. Police sent the boot to a lab for analysis; the lab determined the blood from the boot contained a mixture of DNA from two people. *Id.* At trial, an individual from the lab testified the blood sample was not contaminated, "it was simply a mixed sample." *Id.* The defendant asserted the victim's DNA could have splashed on the boot when police washed the cast of the bloody footprint at his home. *Id.* at 614, 550 S.E.2d at 298. The police argued they were careful and complied with procedures. *Id.* at 615, 550 S.E.2d at 298. In affirming the admission of the DNA evidence, the court found the issue of contamination "relate[d] to the weight of the evidence." *Id.*

Defendant contends the manner in which the red hat was collected and stored placed it at substantial risk for contamination. Other than the seven months it was in Janice's custody, nothing in the record suggests the red hat was contaminated. Janice's testimony—if believed by the jury—was sufficient for the jury to find the red hat was not contaminated.

While the red hat was in Janice's possession for a significant amount of time, the record does not support a finding that it was so contaminated as to be totally

unreliable. *See id.* (holding the DNA evidence was "not so [contaminated] that it [was] totally unreliable" and the issue of contamination "relate[d] to the weight of the evidence"). There is no evidence anyone other than Janice handled the red hat until Detective Gardner took possession of it; instead, there was only speculation such an event may have occurred. Accordingly, because there is evidence to support the trial court's ruling, we hold the trial court did not abuse its discretion in admitting the red hat into evidence.

Defendant's argument the trial court erred by not excluding Leisy's DNA testimony pursuant to Rule 403, SCRE, is not preserved for appellate review. *See State v. Simpson*, 325 S.C. 37, 42, 479 S.E.2d 57, 60 (1996) ("Unless an objection is made at the time the evidence is offered and a final ruling made, the issue is not preserved for review."). While Defendant did argue against the admission of the red hat and the DNA testimony during pre-trial motions and again following Simon's testimony, he did not contemporaneously object during Leisy's testimony. *See State v. Hughes*, 336 S.C. 585, 591, 521 S.E.2d 500, 503 (1999) ("An in limine ruling . . . is not final and does not preserve the issue for appeal."); *State v. Smith*, 337 S.C. 27, 32, 522 S.E.2d 598, 600 (1990) (holding a party must contemporaneously object at the time the evidence is offered in order to properly preserve an error for appellate review).

**AFFIRMED.**[1]

**WILLIAMS, KONDUROS, and HILL, JJ., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.